## No. 14,289.

### ESTATE OF LIVINGSTON.

### SHAFFER *v*. DISTRICT COURT SECOND JUDICIAL DISTRICT ET AL.
#### (77 P. [2d] 649)

Decided March 14, 1938.   Rehearing denied April 4, 1938.

Mr. Charles C. Sackmann, Mr. Charles E. Compton, for plaintiff in error.

Messrs. Schaetzel, Knight & Houston, for defendant in error Livingston.

Mr. Otto Bock, pro se.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Action involving the probate of the alleged last will and testament of Albert S. Livingston, deceased. The proponent, Edward L. Shaffer, is plaintiff in error here. Probate was denied in the county court, and on appeal to the district court, the issue on the proper execution, publication and declaration of the will was tried to a jury, which also found against the proponent. The district judge who presided below is named as a defendant in error because of alleged usurpation of conduct of proponent's case at the trial. He adopts the answer brief of defendant in error, Robert Edwin Livingston, heir and legatee.

In view of the obvious correctness of the conclusions of the county court and district court, this matter will be decided on the application for a supersedeas to save time and expense for all concerned.

The principal asset of the estate consists of a bank account of about $6,500. Testator, a man of 87 years

had been for some time associated in business and living with proponent, who was his cousin. Under the will, testator gave $500 each to a niece and nephew, the latter being Robert Edwin Livingston, defendant in error, the residue of the estate to proponent, and in the event of his death prior to that of the testator, the residue was to go to Lulu Pearl Shaffer, wife of proponent. A further clause provided that in the event that any person should contest the will, "such person shall have nothing of my estate." An attorney, not of record, was named executor and attorney.

The will was typewritten on a printed form, signed "A. S. Livingston," and witnessed by Laura E. Judd and Vinnie Westing, with the usual attestation clause. No question is raised as to testator's mental ability, or as to the genuineness of his signature or that of the witnesses. The only question presented is whether the will was executed, published and declared as required by certain sections of chapter 176, '35 C. S. A. (C. L. 1921, §5187), particularly section 39 of said chapter, which reads as follows: "Any will, by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and either be signed by the testator (or by someone for him in his presence and by his direction) in the presence of two or more credible witnesses, or the signature to which shall be acknowledged by the testator in the presence of two or more credible witnesses. In addition to such signing or acknowledgment, the testator shall, in the presence of said witnesses, declare said writing to be his last will and testament, and said witnesses, at his request, in his presence and in the presence of each other, shall attest the same by subscribing their names thereto."

At the trial in the district court, the following testimony was given by witness Judd in response to questions by the court:

"Q. Mrs. Judd, what else occurred there at that time? A. Well, we went into the home. Mrs. Shaffer called

us to come into her home and witness Mr. Livingston's will. We went there, Mrs. Westing and I. We went in and sat down in the room and there was nothing said, only just passed the time of day.

"Q. What did Mr. Livingston say? A. He did not say anything.

"Q. Did he at that time in your presence and Mrs. Westing's—is that the name? A. Yes, sir.

"Q. Did he at that time declare that exhibit A to be his last will and testament? A. He did not.

"Q. What if anything was said about that will? A. Well, as I was saying, we sat down in the room and passed the time of day. Mr. Livingston sat there and he said nothing. And Mrs. Shaffer then in a few minutes got up and went to her writing desk, opened it up, took the will out and put it on the desk, and she turned to me. 'Mrs. Judd, here is the will. I wish you would sign it,' or 'You may sign it.' And I looked at Mr. Livingston and he said nothing. And I got up and signed the will, and she doubled the will over and put her hand on it so I could just see where I was to sign my name. I sat there by the desk. When I got through, she asked Mrs. Westing to come and witness the will, which Mrs. Westing did. And then she turned to Mr. Livingston and she says, 'Uncle Bert, this is my will, and Mrs. Judd and Mrs. Westing have just witnessed it. Don't you want to witness it, too?' And he said, 'Why, yes,' he would, and which he did. There was nothing more said.

"Q. What did he say? A. Witnessed it, put his name down there on that exhibit. There was nothing said.

The testimony of witness Westing was substantially the same.

In addition, the testimony shows further that the testator did not draw the will, but that it was typewritten by the proponent; that it was not read by or to the testator at the time of its alleged execution; that it was written on a form purchased by the proponent's wife

of a downtown stationer; that the attorney named as executor and attorney in the will declined in writing to qualify; that Mrs. Shaffer made no response to the question by the court: "Mr. Livingston signed it first?"; that Mrs. Shaffer did not deny that the alleged will was folded back so that the parties could not see what they were signing at the time they signed, and, in response to the question, "Didn't you say, 'Uncle Bert, they have witnessed my will. Now will you sign it?', she answered: "No, Judge Bock, I didn't say *it* that way"; (Italics are mine.) that neither of the witnesses was related to the testator or to the proponent or his wife or had any interest in the estate.

It thus appears, that even though there may have been some conflict in the testimony on some points, the preponderance of the evidence is so greatly against the proper execution, publication and declaration of the will, that it is difficult to see how the county court and the jury in the district court could reach any other conclusion.

Of the eleven assignments of error, it is necessary to consider only four: 1. No caveat having been filed, proponent was entitled to have the will admitted to probate because the will was fair on its face. 2. Court erred in refusing proffered testimony of proponent, the principal beneficiary under the will. 3. Misconduct of the trial judge. 4. Refusal to give certain tendered instructions.

1. Is section 63, chapter 176, '35 C.S.A. (C.L. 1921, §5211) jurisdictional in the sense that the court should have entered judgment by default against the nephew here? We say no. He was a nonresident and came here in response to a citation. He had no way of knowing whether he wanted to contest the will or not. It was fair on its face, and it was not until the hearing in the county court that the fatal defects in the execution, publication and declaration appeared, and whether the nephew had been present at the hearing became abso-

lutely immaterial because the proponent failed in the duty which the law places on him.

It is true that in the district court his attorneys filed their written appearance for him without filing a caveat. But this did not change the situation. The burden on the proponent was the same. It was he who asked for the jury. The nephew's attorneys took no part in its selection, nor did they cross-examine any of proponent's witnesses or present any witnesses of their own.

Our court previously has held that section 63, supra, is intended to apply only to such objections as appear on the face of the will, and the facts bring this case clearly within that holding. *Hodgkins v. Ashby,* 56 Colo. 553, 139 Pac. 538.

2. The court did not err in refusing the proffered testimony of Shaffer. As pointed out, he not only was the principal beneficiary under the will, but the admitted author of it. Clearly he is precluded from testifying by section 2, chapter 177, '35 C.S.A. (C. L. 1921, §6556). However, it may be suggested that at best, his proffered testimony was cumulative to that given by his wife, and its exclusion was not prejudicial.

3. There was no prejudicial misconduct on the part of the trial judge. The deficiencies of proof evidenced by answers given in response to questions propounded by counsel for proponent were so apparent that the presiding judge would have been derelict in his duty had he not on his own motion asked questions that would bring out the facts in connection with the execution, publication and declaration of the will. Section 56, chapter 176, '35 C.S.A. (C. L. 1921, §5204), provides inter alia, a will may be admitted if "no proof of fraud, compulsion or other improper conduct is exhibited, *which, in the opinion of the court,* shall be deemed sufficient to invalidate or destroy the same." (Italics are mine.)

4. From an examination of the instructions given to the jury we are of the opinion that they were proper and comprehensive. None given or refused pre-

judiced the rights of proponent and we seriously doubt whether there has been a compliance with our rule seven in connection with this assignment; however, since no prejudice appears, we deem it unnecessary to pass on that question.

In conclusion, we repeat our pronouncement made on a former occasion: "The record as made by the proponents themselves showed a lack of compliance with the essential provisions of our statute concerning the execution and attestation of wills." *Wagner v. Heldt,* 93 Colo. 442, 448-9, 26 P. (2d) 813.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.