No. 14,944.

ESTATE OF MAIKKA.
MAIKKA ET AL. *v.* SALO.
(134 P. [2d] 723)

Decided March 15, 1943.

Messrs. MOYNIHAN-HUGHES, Mr. HARRISON LOESCH, for plaintiffs in error.

Mr. GLENN MILLER, Messrs. FAIRLAMB & FAIRLAMB, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a will contest. Testatrix was Hilma Maikka who left all of her estate—except one dollar to each of two sons—to her daughter, Sophia Salo, defendant in error, who also was the proponent of the will, and who is designated by counsel as contestee. When the will was offered for probate, caveat was filed by proponent's brothers, Fred R. Maikka and Erik W. Maikka. In the original and amended caveats, mental incapacity (in the original caveat only), fraud, and undue influence by the daughter were urged, but these charges were abandoned and lack of proper execution became the sole issue. Objections to the caveat were filed denying all matters therein, and after a hearing in the county court the will was ordered admitted to probate. On appeal to the district court, the attorneys entered into a stipulation under which the evidence taken in the county court, and no other, was to be submitted to the district court. When the matter first came on for hearing in the district court, Hawkins, the scrivener of, and also one of the subscribing witnesses to, the will was ill and the matter was continued, as to him. The testimony of the other subscribing witness, Craig, and that of proponent was taken (without objection either in the county or district court). This hearing was had April 12, 1939. The second hearing was on December 29, 1939, when Hawkins

gave his testimony without objection. Witness Craig was present and testified in rebuttal of Hawkins' testimony. Proponent also offered Elmer Salo, her husband, as a witness but he was not permitted to testify. The matter then was continued to February 7, 1940, when proponent again requested that Elmer Salo be permitted to testify. Counsel for caveators objected on the ground that it was contrary to the terms of the stipulation and that the stipulation had not been set aside. The Court in a rather lengthy statement said he had not yet been able to reach a conclusion because of the conflict in testimony, over-ruled the objection and permitted Salo to testify, following which he ordered the will admitted to probate. Caveators are here asking for a reversal of the judgment, or remand for further hearing.

The specification of points are: 1. The testatrix did not declare her purported will to be her last will and testament in the presence of the subscribing witnesses thereto. 2. The testatrix did not request the subscribing witnesses to her will to witness the same. 3. The subscribing witnesses did not witness the same in the presence of each other. 4. The court erred in itself violating, and permitting attorneys for proponent to violate, the stipulation by receiving further and other testimony.

We deem it unnecessary to consider each of these points separately because in the last analysis the will must stand or fall with the testimony of Elmer Salo and Hawkins. This is inferentially conceded by counsel for caveators. We could not sustain the will without their testimony because the testimony of the subscribing witness Craig, and the proponent—assuming her testimony was admissible—were so contradictory and unsatisfactory that the trial court "couldn't give it any credence."

It is conceded that Salo was a competent witness. See, *In Re Hatfield's Will,* 21 Colo. App. 443, 122 Pac. 63; *White v. Bower,* 56 Colo. 575, 136 Pac. 1053; *Norris v. Bradshaw,* 92 Colo. 34, 18 P. (2d) 467. However, counsel for caveators insist that his testimony was excluded

by stipulation, and this contention raises the determinative issue in this case, because if the Trial Court did not commit reversible error in setting aside or ignoring the stipulation, then we must sustain his conclusion in light of the fact that Salo's testimony is corroborative of that of subscribing witness Hawkins and sustains the will as having been properly executed.

We think the reason given by the Trial Court for setting aside the stipulation is helpful here. He said:

"That is one reason why I permitted other testimony —I wanted to know the facts. I realized Mr. Salo and Mrs. Salo don't understand English so very well. She was not a competent witness in the first place. But her testimony as a whole is so contradictory. Now, she may not have understood what she was talking about. It is so contradictory, I couldn't give it any credence. And I will have to treat Mr. Craig's testimony in the same way. And I will have to sustain this will from the testimony of Mr. Hawkins and Mr. Salo.

"I have known all the time that there were other witnesses there—other persons. It is true that counsel selected their witnesses in the county court; and stipulated I was bound by it. But the court didn't feel that he was bound by it, under which it was submitted to the court—in other words, I believed it was prejudicial to the provisions of the will. And the stipulation being to her detriment, in my opinion, I doubt if her attorney had any right to make the stipulation under the circumstances. And so I tried to pursue a course here by which I could in some way find out the truth of the matter. And it now develops from the testimony of Mr. Salo and Mr. Hawkins that the will was executed according to law; and will be sustained."

██ ██ It is urged that counsel for caveators are estopped to raise this question because the court's order also permitted them to use Craig's testimony, and they argue convincingly in support of their contention. However, it is unnecessary for us to decide the point, be-

cause the law is established that the court—in relation to probating wills—is not bound by stipulations of counsel under circumstances such as exist here. The statute itself surely permits, if it does not compel, the court to make inquiry concerning proper execution of wills. '35 C. S. A., c. 176, §56. See, also, *Shaffer v. District Court,* 102 Colo. 148, 153, 77 P. (2d) 649. In the absence of such a statute, relief against such stipulations rests in the sound discretion of the court. 60 C. J., p. 94. "In a stipulation by counsel for convenience or expedition [that was clearly the purpose of the stipulation in the case at bar] in the trial of a case, if counsel, inadvertently or otherwise, admit or state a fact not in accord with the premises, entirely against the manifest purpose and intention of the parties and the nature of the controversy, and to the irreparable injury of the client they represent, as this seems to be, the court wherein such cause is pending has the power, and rightfully exercises it, to relieve the party from such stipulation." *Welsh v. Noyes,* 10 Colo. 133, 145, 14 Pac. 317.

One cannot read the testimony admitted under the stipulation without being impressed with the reaction of the Trial Judge as recited in his findings, and we are persuaded that he did not abuse his discretion in modifying or abrogating the stipulation to the extent of permitting Salo to testify.

This brings us to the consideration of the problem of whether the evidence given by Hawkins and Salo sufficiently supported the Court's finding that the will was properly executed, because if it did, even though the evidence was conflicting, the judgment must be affirmed. *Wagner v. Heldt,* 93 Colo. 442, 26 P. (2d) 813.

The record shows that on May 25, 1936, Hilma Maikka, testatrix, age 58, together with her daughter (proponent) and son-in-law, Mr. and Mrs. Elmer Salo, called at the office of Mr. Hawkins for the purpose of having Mrs. Maikka's will drawn. Mrs. Maikka was of Finnish descent and could speak but little English. How-

ever, she made it clear to Hawkins in broken English and through her daughter's translation that "she wanted to make a will," and that she did not want "to leave the boys anything." Hawkins testified: "I told her it would not make a legal will—that she had to mention the boys —leave them something * * * I told her she would have to will them at least a dollar. And she said: 'Well, put it in that way.' * * * She said she wanted to leave it all to her daughter. * * * Q. And you drew the will that way? A. Yes, sir. * * * Q. * * * Was it read to her in English? * * * A. It was read to her in English. * * * Q. Who read it to her in English? A. I did. * * * Q. And what did she say? A. Well, she said it was all right. Q. Who was present? * * * A. Mr. Craig, who is a witness on the will, and also Mr. and Mrs. Salo was there. I tried to make it plain to Mrs. Maikka. Q. Who procured Mr. Craig as a witness? A. I did. * * * Q. When did she sign this will after you had prepared and read it to her? A. After Mr. Craig came in. I didn't have her sign it until he had come in. * * * Q. Was he present when you read it to her and she answered that it was all right? A. Yes, sir. Q. And then when she signed it, was he present? Yes, sir. * * * Q. * * * You are certain that Mrs. Maikka signed the will in the presence of yourself and Mr. Craig? A. I am positive of that. Q. And that you and Mr. Craig signed it in the presence of each other and in the presence of Mrs. Maikka? A. Yes, sir. * * * Q. Now then, was Mr. Craig given this will to look at the time he signed? A. Yes, sir. He took it up, and, I suppose, read it. He looked at it long enough to have read it. * * * Q. What did Mrs. Maikka say? * * * A. She said it was all right. I read it to her—explained it to her * * * She made it plain to me that was her will, or I would not have witnessed it."

Elmer Salo testified as to what happened after the three of them went to Hawkins' office and Mr. Hawkins asked: "What can I do for you," as follows: "A. Mrs.

Maikka said 'Will—Will'—Mrs. Maikka says 'I want to make Will—Will.' Then my wife translated 'She wants to make a will.' Mr. Hawkins asked her 'Who do you want to make the will to.' Mrs. Maikka says 'Sophia Salo,' pointing to Mrs. Salo. 'There is nothing to the boys.' And Mr. Hawkins told her 'No, that won't be legal, you have to give something to the boys, anyhow one dollar.' And Mrs. Maikka says 'All right, all right, all right, give a dollar.' Then Mr. Hawkins started to write the will—he was writing, and Mr. Hawkins read it to Mrs. Maikka. And he says 'You have to have another witness.' She said 'You, Hawkins, you, Hawkins,' pointing her finger at Mr. Hawkins. Q. Then what was done? A. Then Mr. Hawkins told her 'No, you have to have another one, I'm all right for one, but you have to get another one.' And Mrs. Maikka says, 'You, Hawkins, you get.' And he says 'I have a man signing names on a will for me, I will get him.' And then Mr. Hawkins went outside, and then Mr. Hawkins came back first, and Mr. Craig was a few minutes later. And then Mr. Hawkins put that paper, will, in front of Mrs. Maikka, and he says 'sign your name here' when Mr. Craig came in. And Mr. Craig came in and says 'How do you do, Mrs. Maikka.' And Mr. Craig says 'I am kind of busy, I haven't time to sit down.' And so Mr. Hawkins then put that paper in front of Mrs. Maikka and says 'Now, you sign here.' And then Mr. Craig took the paper and read it over, and he says 'Is this the will you want me to sign.' Mrs. Maikka says 'Yes, yes, yes.' So then Mr. Craig looked the paper over and signed his name. And then Mr. Hawkins took that paper and signed his name. And then Mr. Craig walked outside—he says 'I have got to go, I haven't time to stay here.' Q. And was this the instrument which I hand you here which bears the filing mark 'Filed in the County Court of Delta County, September 23, 1938'—is that the will that you have in mind? A. I think that is the one—that is Mrs. Maikka's handwriting. Q. And how about this handwriting here?

A. Why, that is Mr. Hawkins', and this is Mr. Craig's. Court: Did you see Mr. Craig and Mr. Hawkins both sign? Yes, sir, I did. Court: Did you see Mrs. Maikka sign it? Witness: Yes, I saw it. She signed first and then Mr. Craig and then Mr. Hawkins."

■ While an attestation clause, which here admittedly was signed by both Craig and Hawkins, is not conclusive, it is prima facie evidence of validity—*Aquilini v. Chamblin*, 94 Colo. 367, 370, 30 P. (2d) 325—and the court has a right to consider it in connection with a witness' credibility, where the latter subsequently denies that the things which he stated under oath took place. A will may be proven, even though the attesting witnesses deny their acts in respect thereto (*In Re Shapter's Estate*, 35 Colo. 578, 584, 85 Pac. 688), if it can be established by other competent testimony, and Salo's testimony here supplies that repudiated by Craig.

■ ■ Counsel for caveators concede that a testator in declaring a writing to be his last will need not use the very words of the statute prescribed for the attestation of wills; testator's clear indication by word or deed that the instrument is his will being sufficient. *Aquilini v. Chamblin, supra,* settles the law in this jurisdiction. Counsel for caveators also concede that a testator need not personally make the request of a witness to act as such, but that this may be conveyed by a third person if authorized, or his act is ratified. See, 125 A. L. R. 414. That this was the procedure here we think is established by the testimony of Hawkins and Salo.

We are of the opinion that the above quoted testimony discloses that there was a substantial compliance with the provisions of the statute. It is not entirely convincing, but since there was no attempt to show mental incapacity or undue influence, the presumption obtains that these parties were acting in good faith. The evidence that the financial interests of the sons had been settled is not disputed, so it would not be unnatural for

the mother to give the balance of her property to her daughter.

No good purpose could now be served by a further trial, as witness Hawkins has since passed away and there is no suggestion that there are other witnesses who could shed any light on the situation.

We think this case was peculiarly one for disposition by the Trial Court, and considering the patience and thoroughness with which he sought to learn the truth in connection with the execution of the will, we are of the opinion that the judgment should be, and it hereby is, affirmed.

MR. JUSTICE HILLIARD formerly concurring, now dissents.

MR. JUSTICE KNOUS not participating.