NANCY SPIEGELMAN, SCOTT SPIEGELMAN, TRACY SPIEGELMAN, STEVE SPIEGELMAN, AND JACK SPIEGELMAN, MINORS, BY AND THROUGH THEIR GUARDIAN AD LITEM, AARON SPIEGELMAN; AND AARON SPIEGELMAN, INDIVIDUALLY, APPELLANTS, v. GOLD DUST TEXACO, JAMES KLATT, RALPH KLATT, JAMES E. SCHEELER, AND TEXACO OIL COMPANY, A CORPORATION, RESPONDENTS.

No. 7603

September 8, 1975                    539 P.2d 1216

*Hilbrecht, Jones & Schreck,* Las Vegas; *Walkup, Downing & Sterns* and *Jerry O'Reilly,* San Francisco; and *Robert A. Seligson,* San Francisco, for Appellants.

*Albright & McGimsey,* Las Vegas, for Respondents Gold Dust Texaco, James Klatt, Ralph Klatt, and James E. Scheeler.

*Rose, Norwood & Edwards,* Las Vegas, for Respondent Texaco Oil Company.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal by Plaintiffs Nancy Spiegelman, Scott Spiegelman, Tracy Spiegelman, Steve Spiegelman, and Jack Spiegelman, minors, by and through their guardian ad litem, Aaron Spiegelman, and Aaron Spiegelman, individually, from a judgment entered in favor of Defendants Texaco, Inc., and Ralph Klatt and James E. Scheeler, doing business as Gold Dust Texaco, following an order granting defendants' motion to dismiss the complaint with prejudice under NRCP 41(e).

Plaintiffs filed their complaint on November 25, 1969, seeking damages for wrongful death and personal injuries that resulted from an automobile accident. The plaintiffs alleged, in substance, that defendants performed work on a 1967 Ford station wagon prior to the accident, and that as part of this work the defendants removed the left rear wheel of the vehicle but replaced it in a negligent and careless manner. As a direct and proximate result of this negligence, plaintiffs allege that the wheel came off, the vehicle went out of control, and it collided head on with another automobile. Gaye Spiegelman, mother of the five surviving minor plaintiffs, was killed; three other children, David, Sylvia, and Mark Spiegelman, were killed; and four other children who were in the automobile suffered severe injuries. Discovery was actively pursued for about 6 months after the complaint was filed. Interrogatories and requests for admissions were served and answered. In April 1970 the depositions of Defendants Ralph Klatt and James Scheeler were taken. There was no further activity in the case, however, until January 31, 1973, when plaintiffs filed a substitution of attorneys, naming Frank A. Schreck as their counsel. On February

12, 1973, plaintiffs served interrogatories on Defendant Texaco; they were answered on April 10, 1973. On May 11, 1973, plaintiffs filed a demand for jury trial, together with a note for trial docket, requesting that the case be set for trial.

On May 24, 1973, plaintiffs filed a motion for leave to take a number of depositions, together with the affidavit of Mr. Schreck stating that counsel for Defendants James and Ralph Klatt, James Scheeler, and Gold Dust Texaco "does not object to further discovery." The record does not reflect whether counsel for Texaco, Inc., objected to the taking of the depositions, but Texaco did not make any motion to dismiss the case at that point for lack of prosecution. On June 4, 1973, Judge Leonard I. Gang granted plaintiffs' motion; and plaintiffs then filed and served notice of taking depositions of T. V. Rossiter, L. W. Slover, T. L. Carey, and Dwight Pilger, scheduling them for July 17 and 18, 1973. The depositions of Mr. Slover (sales representative of Texaco, Inc.), Mr. Rossiter (former sales representative of Texaco, Inc.), and Mr. Pilger (sales supervisor of Texaco, Inc.) were taken on those dates. Mr. Carey (district sales manager of Texaco) was served with a new notice on August 13, and his deposition was eventually taken on October 19, 1973.

On August 7, 1973, Texaco served notice to take depositions of plaintiffs. Plaintiffs, residing in Santa Rosa, California, traveled to Las Vegas, and on August 30, 1973, their depositions were taken. Requests to produce various items of evidence were made in August 1973 by both Texaco and plaintiffs. In November, Texaco initiated further discovery and noticed the depositions of Elwyn Dennis Hanes and Marvin Paul Brody. In the meantime, supplemental interrogatories propounded by plaintiffs were answered by Texaco on October 25, 1973. On November 26, 1973, plaintiffs noticed the depositions of William Linn (manager of advertising and sales promotion), Kerryn King (senior vice president, public affairs), and Armon M. Card (vice president, sales department), to be taken at Texaco's office in New York City on January 14, 1974; and plaintiffs had a commission issued for the taking of these depositions.

The case had been set for trial on January 21, 1974. However, since additional discovery was desired by both sides, and counsel who would be trying the case on behalf of plaintiffs had another trial date scheduled for that time, plaintiffs filed, on November 21, 1973, a motion to continue the trial date to April 1974. The court granted a continuance until May 13,

1974, but it also granted defendants leave to file a motion to dismiss for lack of prosecution. Counsel for Texaco meanwhile again noticed the deposition of Mr. Brody, scheduling it for December 13, 1973. Following the court's action, Texaco and the remaining defendants filed motions to dismiss. Judge Carl J. Christensen granted these motions and ordered the action dismissed with prejudice on December 13, 1973. Judgments were thereupon entered on the order, and plaintiffs have appealed.

1. Defendants waited until December 1973 to seek dismissal of this action. By that time, a date had been set for trial, and plaintiffs had diligently pursued their case for approximately a year. From January 31, 1973, when Mr. Schreck became plaintiffs' counsel of record, until the time of dismissal, extensive discovery was actively carried on by both plaintiffs and defendants. It was not until plaintiffs' counsel requested a continuance to facilitate further discovery by both sides and to alleviate a conflict that defendants made any effort to seek dismissal for lack of prosecution. When the motion to dismiss was granted, there was in fact no lack of prosecution.

2. The issue before us, then, is whether, as a matter of law, the trial court abused its discretion in dismissing this action. In Harris v. Harris, 65 Nev. 342, 350, 196 P.2d 402, 406 (1948), this court stated:

". . . The only limitation upon the discretionary power of the court to dismiss a cause for delay in its prosecution is that it must not be abused. [Citation omitted.]

"Each particular case presents its own peculiar features, and no iron clad rule can justly be devised applicable alike to all. [Citations omitted.]

". . . The discretion to be exercised, under the circumstances of the particular case, is a legal discretion, to be exercised in conformity with the spirit of the law and in such a manner as to subserve and not to impede or defeat the ends of substantial justice. [Citation omitted.]"

3. The spirit of the law is that matters be heard on their merits; where a case is presently being prosecuted with diligence, it serves the interests of justice that the matter be presented to the trier of fact at trial. The applicable rule is set forth in 9 C. Wright, Federal Practice & Procedure, Civil § 2370, at 204, as follows:

"There are no rigid time limits that govern and all of the circumstances in each particular case must be considered in determining whether there has been a failure to prosecute that

is sufficiently serious to justify dismissal. Excuses may be shown that will justify the delay in question, but the fact that a plaintiff has been stirred into action by a threat of dismissal is no excuse. *However, if the claim is presently being prosecuted with diligence it cannot be dismissed because at some earlier time plaintiff did not act diligently.*" (Footnotes omitted; emphasis added.)

Federal courts have recognized the proviso emphasized above. For example, in Rollins v. United States, 286 F.2d 761 (9th Cir. 1961), the court stated that, while it would not have been an abuse of discretion to dismiss an action for lack of prosecution during a lengthy period of inactivity, where the judge fails to do so, the pendency of the action on a later date is sufficient to authorize the judge to cause an alias summons to be issued and to allow the plaintiff to proceed with ·his action. There having been no lack of diligence on the part of the plaintiff in bringing the action to trial following the issuance of the alias summons, it was held to be error thereafter to dismiss the action; and in United States v. Myers, 38 F.R.D. 194, 197 (N.D. Cal. 1964), the court specifically held that, where the plaintiff was presently prosecuting the claim with reasonable diligence, the action could not be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure because at some earlier time the plaintiff had failed to act with diligence.

Similarly, the Supreme Courts of our sister states have observed this tenet. In State v. McClaine, 300 N.E.2d 342, 344 (Ind. 1973), the Supreme Court of Indiana held: "A motion to dismiss for want of prosecution should not be granted if the plaintiff resumes diligent prosecution of his claim, even though, at some prior period of time, he has been guilty of gross negligence." In First Nat'l Bank v. Taylor, 488 P.2d 1026 (Alaska 1971), the Supreme Court of Alaska held that the rule of civil procedure pertaining to dismissal for want of prosecution applies only where the motion to dismiss is filed before the period of lapse is terminated by some affirmative action on the part of the plaintiff. In reversing the judgment of dismissal, the court stated, at 1032:

"The purpose of Rule 41(e) is to encourage plaintiffs to keep their cases moving at a reasonable speed and to allow the court to clear the calendar of cases that are not being prosecuted diligently. Where, however, the lapse has already occurred, and further proceedings have been taken, it is neither necessary or [sic] justifiable to allow dismissal because a party finds, as Taylor here found, that nearly two years prior to the motion to dismiss a lapse in excess of one year has occurred.

We therefore hold that the present action was not properly dismissable under Civil Rule 41(e)."

The Supreme Court of New Mexico has rendered numerous decisions on this point. In Martin v. Leonard Motor-El Paso, 402 P.2d 954, 957 (N.M. 1965), the court expressed a basic equitable concern for withholding dismissal where a plaintiff, dilatory in the past, resumes active prosecution: "We think it clear that the rights afforded by the rule are intended to expedite the prosecution of litigation in our courts, and that to be effective in accomplishing that purpose, the defendant may not sleep upon such rights and permit a party to continue prosecution of a case which is subject to being dismissed upon motion, expending both time and money [cite omitted], and particularly to take action to bring the case to its final determination, and then press for a dismissal."

See also Beyer v. Montoya, 402 P.2d 960 (N.M. 1965); Dollison v. Fireman's Fund Ins. Co., 423 P.2d 426 (N.M. 1967); State v. Molybdenum Corp., 496 P.2d 1086 (N.M. 1972). Finally, in Denham v. Superior Court, 86 Cal.Rptr. 65, 71, 468 P.2d 193, 199 (1970), the California Supreme Court, in holding that where both parties had indicated that they are ready for trial an action should not be dismissed for lack of prosecution, expressed another fundamental concern supporting this concept: "Although a defendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation, the policy is less powerful than that which seeks to dispose of litigation on the merits rather than on procedural grounds. [Cite omitted.]" See, also, Brown v. Superior Court, 86 Cal.Rptr. 670, 671 (Cal.App. 1970).

We believe that, under the facts of the instant case, it was an abuse of discretion to grant the defendants' 41(e) motion to dismiss for lack of prosecution and that the parties should have their day in court. The case is therefore reversed and the cause remanded for trial on the merits of the action.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.