LAKE MEREDITH RESERVOIR
COMPANY, a Colorado
corporation, Appellant,

v.

The AMITY MUTUAL IRRIGATION
COMPANY, a Colorado corporation,
the Box Springs Canal and Reservoir
Company, a corporation, Twin Lakes
Reservoir and Canal Company, and
Robert W. Jesse, Division Engineer for
Water Division No. 2, Appellees,

and

The Fort Lyon Canal Company,
Intervenor-Appellee.

No. 83SA299.

Supreme Court of Colorado,
En Banc.

April 29, 1985.

Moses, Wittemyer, Harrison and Woodruff, P.C., John Wittemyer, Timothy J. Beaton, Boulder, for appellant.

Shinn Lawyers, Carl M. Shinn, Lamar, for appellee The Amity Mut. Irr. Co.

Lefferdink & Davis, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, P.C., Bruce D. Bernard, Denver, for intervenor-appellee.

No appearance for The Box Springs Canal and Reservoir Co., Twin Lakes Reservoir and Canal Co., and Robert W. Jesse, Div. Engineer for Water Div. No. 2.

LOHR, Justice.

The Lake Meredith Reservoir Company (Lake Meredith) appeals from a judgment of the District Courts in and for Water Division 2 (water court) dismissing for lack of prosecution a suit filed by Lake Meredith in 1931. We affirm.

## I.

In 1931, Lake Meredith filed an action in Bent County District Court against The Arkansas Valley Sugar Beet and Irrigated Land Company (Land Company), predecessor-in-interest to appellee The Amity Mutual Irrigation Company (Amity), and two other defendants.[1] The suit involved a dispute over the relative priorities of certain water rights held by Lake Meredith and by the Land Company.[2]

The Land Company, a New Jersey corporation, removed the case to federal court on the ground of diversity of citizenship. There the matter remained until 1939.

---

1. The other defendants were The Box Springs Canal and Reservoir Company and Florence May Recker. Neither Box Springs nor Recker made an appearance or participated in the modern proceedings before the water court or in the appeal. Although Recker was an original defendant below, and was labelled as an appellee in Lake Meredith's notice of appeal, she was replaced in the caption without explanation by The Twin Lakes Reservoir and Canal Company when Lake Meredith filed a designation of parties. The record does not show that Twin Lakes was a party to the litigation. Nor did Twin Lakes enter an appearance on appeal.

2. The underlying issue in the litigation is described by Lake Meredith, in its opening brief, as follows:

The original adjudication in Water District No. 14 was completed and decreed on March 23, 1896. Lake Meredith Reservoir was decreed on November 25, 1916 in a supplemental adjudication in Water District No. 14 the right to store 26,028.4 acre-feet with an appropriation date of March 9, 1898.

The original adjudication in Water District No. 17 was completed and decreed on April 8, 1905. The Great Plains Reservoirs now owned by Amity Mutual Irrigation Company ("Amity") were decreed on February 3, 1927 in a supplemental adjudication in Water District No. 17 the right to store 265,552 acre-feet of water with an appropriation date of August 1, 1896. Thus, the Great Plains Reservoirs were awarded a priority earlier than the date of the previous general adjudication and earlier than the priority date of rights decreed in that general adjudication for Water District No. 17.

A determination that Amity's Great Plains Reservoirs are senior in priority to Lake Meredith Reservoir means that Lake Meredith must forego diversion of a substantial quantity of water that it would be [sic] otherwise be entitled to store.

When Amity, a Colorado corporation, succeeded to the interests of the Land Company and in 1939 was substituted for that company as a defendant, diversity was destroyed, and the case was remanded to the Bent County District Court. In April 1944, the suit was dismissed by the district court for failure on the part of Lake Meredith to prosecute diligently, but the case was soon reinstated upon Lake Meredith's motion. Amity filed an answer in October 1944.

On June 7, 1945, Lake Meredith and the defendants, including Amity, entered into the following stipulation, which was filed with the court on June 10:

> NOW COME the above named plaintiff [Lake Meredith] in the above entitled cause, by Frank N. Bancroft and Harry E. Mast, its attorneys, and the above entitled defendants [Amity and the other two defendants] by Henry C. Vidal and Alfred Todd, their attorneys, and at plaintiff's request stipulate and agree that the above entitled cause shall, with the approval of the Court, stand upon the docket of the Court without being set for hearing and without any further orders being entered in said cause, with the understanding that said cause, or any motion by either of the parties hereto, may be set at any time by either of the parties upon ten days' notice to the other party.

There is no indication on the written agreement or elsewhere in the record that the district judge approved the stipulation or acknowledged that it was filed. The next action shown in the record is a motion to dismiss for lack of prosecution filed by

Amity in 1947. The court denied the motion. Then, on April 5, 1949, the district court "retired" the case from the docket on its own motion. It can be inferred from the record that this action was taken as part of a general review of the status of pending cases.

Nothing further happened until 1982, when, during hearings on a change-of-water-right proceeding filed by Amity in 1980, Lake Meredith's present counsel first learned of the existence of the 1931 suit. At Lake Meredith's request, on September 14, 1982, the division 2 water judge ordered the clerk of the Bent County District Court to transmit the record in the 1931 suit to the water court.[3] In October 1982, Lake Meredith filed a motion that the complaint in that suit be amended by the deletion of certain claims for relief and that summary judgment be granted on the remaining claims. Hearing on the motion was set for February 24, 1983.

The Fort Lyon Canal Company (Fort Lyon) filed a motion to intervene in the 1931 suit on February 15, 1983, on the ground that Fort Lyon had acquired an interest from Amity in one of the water rights at issue in that suit. Along with the motion to intervene, Fort Lyon filed a motion to dismiss for lack of prosecution. Amity then filed a separate motion to dismiss for failure to prosecute.

▆ On February 24, 1983, the water court granted Fort Lyon's motion to intervene and the motions of Fort Lyon and Amity to dismiss for lack of prosecution. Lake Meredith appeals.[4]

---

3. Upon the adoption of the Water Right Determination and Administration Act of 1969, ch. 373, 1969 Colo.Sess.Laws 1200 (codified at article 92 of title 37, 15 C.R.S. (1973 & 1984 Supp.)), Colorado was divided into seven water divisions. § 37–92–201, 15 C.R.S. (1973). Established in each water division was the position of water judge of the district courts of all counties situated entirely or partly within the division. § 37–92–203(1), 15 C.R.S. (1973 & 1984 Supp.). These "water courts" were given exclusive jurisdiction over water matters specified in the 1969 Act, including changes of water rights. Id.; § 37–92–302(1)(a), 15 C.R.S. (1973 & 1984 Supp.). Water right proceedings pending at the

time of the adoption of the 1969 Act were allowed to continue, and were transferred to the relevant water judge if not completed by June 1, 1972, unless the chief justice of the supreme court ordered otherwise. § 37–92–601, 15 C.R.S. (1973).

4. Fort Lyon argues that this court should dismiss Lake Meredith's appeal on the grounds that the dismissal in the water court was without prejudice and, thus, was not a final, appealable judgment. See C.A.R. 1(a). We determine, however, that the dismissal resolved the matter on the merits and is an appealable judgment. The water court's oral ruling granted the mo-

## II.

Lake Meredith argues that the water court erred in dismissing the suit for an alleged failure on the part of Lake Meredith to prosecute diligently. We reject this argument.

■ The district courts have the inherent power to dismiss a claim for failure to prosecute. *Rudd v. Rogerson*, 152 Colo. 370, 374, 381 P.2d 995, 998 (1963); *Cervi v. Town of Greenwood Village*, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961). This power is reinforced by C.R.C.P. 41(b)(1), which recognizes that a court may dismiss a claim on a defendant's motion for failure to prosecute, and by C.R.C.P. 41(b)(2), which provides that a court upon reasonable notice and pursuant to rules may dismiss actions not prosecuted or brought to trial with due diligence. The procedures for effecting dismissal for failure to prosecute are detailed in C.R.C.P. 121(b), section 1-10. Except where altered by statute, the water courts have the same inherent powers and status as the district courts. *Cf. Michel v. Front Range Land & Livestock Co.*, 638 P.2d 74, 75 (Colo.1981). With the same limitation, the Colorado Rules of Civil Procedure apply in water court proceedings. C.R.C.P. 81(a); *Colorado River Water Conservation District v. Rocky Mountain Power Co.*, 174 Colo. 309, 312–14, 486 P.2d 438, 440–41 (1971). The statutes contain no special criteria or procedures concerning dismissal for failure to prosecute claims in the water courts.

■ The decision whether to dismiss an action because of the plaintiff's failure to prosecute lies within the sound discretion of the trial court. *Rudd v. Rogerson*, 152 Colo. 370, 374, 381 P.2d 995, 998 (1963); *Cervi v. Town of Greenwood Village*, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961); *BA Leasing Corp. v. Board of Assessment Appeals*, 653 P.2d 80, 81 (Colo.App.1982). The burden is upon the plaintiff to prosecute a case in due course without unusual or unreasonable delay. *Cervi v. Town of Greenwood Village*, 147 Colo. at 193, 362 P.2d at 1052; *Johnson v. Westland Theatres, Inc.*, 117 Colo. 346, 349, 187 P.2d 932, 933 (1947); *BA Leasing Corp. v. Board of Assessment Appeals*, 653 P.2d at 81. When evaluating a motion to dismiss for failure to prosecute, a trial court must bear in mind that courts "exist primarily to afford a forum to settle litigable matters between disputing parties." *Mizar v. Jones*, 157 Colo. 535, 537, 403 P.2d 767, 769 (1965). In the absence of a showing by the plaintiff of mitigating circumstances or a reasonable excuse for the delay, however, an unusual delay in prosecution justifies an exercise of the trial court's discretion in dismissing an action.[5] *Rudd v. Rogerson*,

tions to dismiss without stating whether the dismissal was with or without prejudice. The written judgment of dismissal as originally drafted by Fort Lyon and Amity and issued by the court stated that the dismissal was with prejudice. Lake Meredith objected that the written judgment did not follow the oral ruling in this particular. The water court agreed that the written judgment should conform to the oral ruling, and altered the written judgment to read simply that the cause was dismissed, without stating whether the dismissal was with or without prejudice. C.R.C.P. 41(b)(1), relating to dismissal on motion of a defendant, provides that unless the order for dismissal "otherwise specifies" a dismissal for failure to prosecute under the rule "operates as an adjudication upon the merits." C.R.C.P. 41(b)(2) further provides that actions not prosecuted or brought to trial with due diligence may be dismissed by the court "with prejudice." Thus, the dismissal of Lake Meredith's claim operated to resolve it on the merits and is a final judgment that may be appealed.

5. We noted and applied this standard in *Mizar v. Jones*, 157 Colo. 535, 537, 403 P.2d 767, 769 (1965) ("Therefore, where there are facts that serve as mitigating circumstances for the delay, as there are here, they should be considered by the court and dismissal denied upon such a showing."). In the final paragraph of our opinion in *Mizar*, however, we also stated that "one's day in court should not be denied except upon a serious showing of wilful default," and concluded that such a showing was absent in that case. 157 Colo. at 539, 403 P.2d at 770. We quoted *Mizar's* "wilful default" requirement approvingly in *Levine v. Colorado Transportation Co.*, 163 Colo. 215, 219–20, 429 P.2d 274, 276 (1967), and stated that wilful default is a "necessary" finding in *Smith v. Bott*, 169 Colo. 133, 134–35, 454 P.2d 82, 83 (1969). *Accord Smith v. Bott*, 172 Colo. 301, 472 P.2d 137 (1970). The court of appeals

152 Colo. at 374, 381 P.2d at 998; *Yampa Valley Coal Co. v. Velotta*, 83 Colo. 235, 263 P. 717 (1928); *BA Leasing Corp. v. Board of Assessment Appeals*, 653 P.2d 80 (Colo.App.1982).

Certainly, a delay of thirty-seven years in prosecuting an action is unusual. Lake Meredith, however, asserts three reasons why the water court's dismissal was an abuse of discretion even under this extreme circumstance.

### A.

First, Lake Meredith argues that a motion to dismiss for lack of prosecution cannot be granted, even if the plaintiff has been guilty of gross negligence in pursuing the action, if the plaintiff resumes diligent prosecution of the claim before the motion to dismiss is filed. Lake Meredith relies on *Farber v. Green Shoe Mfg. Co.*, 42 Colo. App. 255, 256–57, 596 P.2d 398, 399–400, *cert. denied* (1979), in which the court of appeals adopted this rule of law, relying upon decisions from other jurisdictions.

■ Whether a plaintiff has resumed prosecution after a lengthy delay should be an important factor in the trial court's consideration of a motion to dismiss for failure to prosecute. Nevertheless, a unilateral resumption of prosecution should not insulate a plaintiff from dismissal for lack of prosecution as a matter of law and in all circumstances. The trial court should also consider a number of other relevant factors in the exercise of its discretion— e.g., the length of delay, the reasons for the delay, the prejudice that will result to the defendant by allowing the matter to continue, the difficulties in trying the case

as a result of the delay, the nature and extent of the plaintiff's renewed efforts— when balancing the policy favoring prevention of unreasonable delay in litigation against the policy favoring resolution of disputes on the merits.

■ Furthermore, it is not the defendant's burden to prosecute the action with diligence, and the defendant is under no obligation to prod the plaintiff into action by filing motions to dismiss while the case lies dormant. *Rathbun v. Sparks*, 162 Colo. 110, 115, 425 P.2d 296, 299 (1967); *Yampa Valley Coal Co. v. Velotta*, 83 Colo. at 238, 263 P. at 719. Therefore, the defendant should not be foreclosed from complaining about the plaintiff's lack of diligent prosecution simply because of the unilateral resumption of the action by the plaintiff after an unreasonable delay.

■ We cannot say, on the record before us, that the water court abused its discretion in dismissing Lake Meredith's suit when Lake Meredith resurrected the action after a delay of thirty-seven years and filed a motion to amend the complaint and for summary judgment. Amity filed its motion to dismiss for lack of prosecution shortly after Lake Meredith initiated efforts to move the case forward, and Fort Lyon reasonably and timely moved to intervene and dismiss. The reasons for the delay and the possible prejudice to the defendants in litigating claims so long deferred were significant issues for the water court to consider before allowing the action to proceed. To the extent that *Farber v. Green Shoe Mfg. Co.* would have prohibited the water court as a matter of law from

has also echoed the *Mizar* "wilful default" standard in *Tell v. McElroy*, 39 Colo.App. 431, 432, 566 P.2d 374, 375 (1977), and *Kappers v. Thomas*, 32 Colo.App. 200, 201–02, 511 P.2d 910, 911, *cert. denied* (1973). In other cases subsequent to *Mizar*, however, we have made no mention of wilful default as a prerequisite to dismissal for failure to prosecute. *See Schleining v. Estate of Sunday*, 163 Colo. 424, 431 P.2d 464 (1967); *Rathbun v. Sparks*, 162 Colo. 110, 425 P.2d 296 (1967). Likewise, the court of appeals has not alluded to this standard in several post-*Mizar* cases involving motions to dismiss for lack of

prosecution. *See BA Leasing Corp. v. Board of Assessment Appeals*, 653 P.2d 80 (Colo.App. 1982); *Farber v. Green Shoe Mfg. Co.*, 42 Colo. App. 255, 596 P.2d 398, *cert. denied* (1979). While wilful default is an important factor for a court to consider in ruling on a motion to dismiss for failure to prosecute, it should not be understood as indispensable. It is simply one of a number of considerations that a trial court must take into account in making its discretionary ruling. To the extent that the language in *Mizar* and other cases suggests otherwise, we repudiate it.

considering the motions to dismiss for lack of prosecution solely because Lake Meredith resumed prosecution of the claims, and would not have allowed the court to inquire into the totality of the circumstances surrounding the delay, we repudiate that holding.[6]

### B.

Next, Lake Meredith argues that the 1945 stipulation between Amity and Lake Meredith—an agreement to allow the case to stand on the docket until further action by either party—precludes a dismissal for lack of prosecution in this case. We note first that the matter was not allowed by the district court to "stand upon the docket" pursuant to the stipulation; the case was "retired"[7] from the docket four years later. We also note the water court's finding that Fort Lyon, not being a party to the stipulation, might be prejudiced by its enforcement.

More importantly, while we agree with Lake Meredith that the courts must make every effort to give effect to the stipulations of litigants, relief from a stipulation may be granted in order to prevent manifest injustice. *Westinghouse Electric Corp. v. Adams,* 570 F.2d 899, 902 (10th Cir.1978) (per curiam); *United States v. Harding,* 491 F.2d 697, 698 (10th Cir.), *appeal after remand,* 507 F.2d 294 (10th

Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1437, 43 L.Ed.2d 679 (1975). The same legal rules apply to a stipulation as to any other agreement between private parties—if there is a sound reason in law or equity for avoiding or repudiating a stipulation, a party is entitled to be relieved from its requirements upon timely application. *See Klein v. Klein,* 544 P.2d 472, 476 (Utah 1975). Moreover, where, as here, a stipulation purports to prevent the court from assuring that a case on its docket is progressing toward conclusion, the court has a legitimate and important concern about giving effect to that agreement absent a demonstration of its continuing reasonableness. Whether to give effect to or repudiate such a stipulation rests with the sound discretion of the trial court. *Cf. Maikka v. Salo,* 110 Colo. 433, 437, 134 P.2d 723, 725 (1943) (court not bound by stipulation limiting persons whose testimony could be considered on validity of execution of will).

We cannot say that the water court abused that discretion here. There is no evidence in the record that Lake Meredith relied on the stipulation, or upon representations from Amity or the district court as to the continuing vitality of the stipulated continuance, in delaying prosecution. Rather, the suit simply appears to have

---

6. Other jurisdictions have announced a rule in accord with the one adopted in *Farber v. Green Shoe Mfg. Co.,* 42 Colo.App. 255, 596 P.2d 398 (1979). *E.g., United States v. Myers,* 38 F.R.D. 194 (N.D.Cal.1964); *First National Bank of Fairbanks v. Taylor,* 488 P.2d 1026 (Alaska 1971); *Denham v. Superior Court,* 2 Cal.3d 557, 86 Cal.Rptr. 65, 468 P.2d 193 (1970); *Ayers v. D.F. Quillen & Sons, Inc.,* 5 Storey 481, 55 Del. 481, 188 A.2d 510 (1963); *State v. McClaine,* 261 Ind. 60, 300 N.E.2d 342 (1973); *Brymerski v. City of Great Falls,* 636 P.2d 846 (Mont.1981); *Spiegelman v. Gold Dust Texaco,* 91 Nev. 542, 539 P.2d 1216 (1975); *Martin v. Leonard Motor-El Paso,* 75 N.M. 219, 402 P.2d 954 (1965). *See also* 2B W. Barron & A. Holtzoff, *Federal Practice & Procedure* § 918 (C. Wright rev. 1961); and 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2370 (1971). A review of those cases, however, reflects no period of delay nearly so egregious as the one in the litigation before us, and most involve substantial renewed activity in

prosecuting the case in question before the filing of the motion to dismiss. Some of the cases suggest limitations on the broadly-stated principle that renewed efforts to prosecute will preclude dismissal based on a later motion. *See United States v. Myers,* 38 F.R.D. at 197 (had the defendant demonstrated prejudice by the delay, this factor would have weighed heavily in the trial court's exercise of discretion); *Brymerski v. City of Great Falls,* 636 P.2d at 849 (after announcing the rule as stated in *Farber,* the court reviewed the defendants' claim of prejudice in ability to defend and rejected it as factually unfounded).

7. The record and the briefs do not enlighten us concerning the precise meaning and effect of the trial court's determinations that a case should "stand upon the docket" or be "retired" from the docket. It is unnecessary to make these meanings definite in order to resolve this case.

been forgotten for more than three decades. The water court found that Amity and Fort Lyon would be prejudiced by the resumption of the suit; that between the filing of the suit in 1931 and the plaintiff's renewed activity · in 1982, substantial changes in the substance and procedure of water law in Colorado had occurred; that factual issues concerning the early decrees upon which the parties rely may be in dispute, despite Lake Meredith's claim to the contrary as asserted in the motion to amend; and that witnesses with a knowledge of the circumstances surrounding the decrees and the initiation of the water rights at issue were no longer available. Evidence in the record supports these findings. Under all the circumstances present here, the water court did not abuse its discretion in declining to give effect to the 1945 stipulation and in dismissing the suit for lack of prosecution.

## C.

 Finally, Lake Meredith argues that mitigating circumstances do exist, reasonably explaining and excusing Lake Meredith's delay in prosecution. Lake Meredith argues that concern over how the operation of the John Martin Reservoir, under construction on the Arkansas River in the mid-1940s, and the Arkansas River Compact, under negotiation between Colorado and Kansas at the same time, would affect the water rights at issue forced Lake Meredith, and Amity, to call a halt to the litigation, a halt which reasonably lasted until Lake Meredith resumed prosecution in 1982.

The water court rejected this argument by Lake Meredith without comment in the oral or written findings. The circumstances surrounding the suit, including the minutes of a 1944 meeting between the directors of Lake Meredith and Amity, placed in the modern record by Lake Meredith, indicate that the uncertainties posed by the John Martin Reservoir and by the Arkansas River Compact were responsible, at least in part, for the 1945 stipulation. However, there is no evidence in the record that the subsequent thirty-seven-year delay

in prosecution was due to a conscious effort on the part of Lake Meredith to study the effect of the reservoir and the compact on the issues involved in the suit, or that resolution of that concern prompted the resumption of the litigation. Rather, in the progress of time, the case simply appears to have been forgotten by Lake Meredith and by Amity. Lake Meredith did not present a convincing explanation as to why the purported mitigating circumstances halted prosecution over the length of the delay, and why prosecution could now go forward.

## III.

Lake Meredith has not shown that the water court's decision to dismiss the suit for lack of prosecution was an abuse of that court's discretion. We affirm the judgment.