The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 31, 2018

2018COA81

## No. 17CA0431, *Kelly v. Bd. of Cty. Comm'rs* — Taxation — Property Tax — Residential Land

In this property tax case, a division of the court of appeals considers whether the Board of Assessment Appeals erred in declining to reclassify a parcel of land as residential — rather than vacant — because the separately titled parcel was not under "common ownership" with a contiguous residential parcel. The division concludes that determining ownership under section 39-1-102(14.4)(a), C.R.S. 2017, requires looking beyond record title and examining a person's or an entity's right to possess, use, and control the contiguous parcels.

The division also concludes that the Board of Assessment Appeal abused its discretion when, on its own and without notice, it rejected the parties' stipulation that two issues were undisputed.

Accordingly, the division reverses the order and remands for reclassification.

COLORADO COURT OF APPEALS       **2018COA81**

Court of Appeals No. 17CA0431
Colorado Board of Assessment Appeals Case No. 68821

Karen L. Kelly, Trustee,

Petitioner-Appellant,

v.

Board of County Commissioners of Summit County, Colorado,

Respondent-Appellee,

and

Board of Assessment Appeals,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE DUNN
Welling and Casebolt*, JJ., concur

Announced May 31, 2018

Ryley Carlock & Applewhite, F. Britton Clayton III, Denver, Colorado, for
Petitioner-Appellant

Jeffrey L. Huntley, County Attorney, Franklin Celico, Assistant County
Attorney, Breckenridge, Colorado, for Respondent-Appellee

Cynthia H. Coffman, Attorney General, Emmy A. Langey, Assistant Solicitor
General, Krista Maher, Assistant Attorney General, Denver, Colorado, for
Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     This property tax case involves two adjacent parcels of land in Summit County, Colorado — one classified as residential and one as vacant — with a separate trust holding record title to each parcel. Karen L. Kelly (Ms. Kelly), Trustee of the separate trusts each holding record title to one parcel, sought reclassification of the vacant parcel (subject parcel) for property tax purposes. The Board of Assessment Appeals (BAA) denied her request, concluding that the two differently titled parcels were not under "common ownership" within the meaning of section 39-1-102(14.4)(a), C.R.S. 2017, which defines "residential land" for purposes of the property tax statute.

¶ 2     Ms. Kelly appeals the BAA's denial of her reclassification request. Because we conclude that Ms. Kelly presented sufficient evidence establishing common ownership of both parcels, we reverse the BAA's order and remand with directions for the BAA to reclassify the subject parcel as residential land for tax years 2014 and 2015.

## I.    Background

¶ 3    In the 1990s, Ms. Kelly purchased two adjacent parcels of land in Summit County.  She built a home on one parcel (residential parcel) and left the subject parcel undeveloped.

¶ 4    Sometime after she purchased the two parcels, Ms. Kelly placed them in trust.  In particular, on counsel's advice, she put the residential parcel in the Karen L. Kelly 2011 Irrevocable Trust, a qualified personal residence trust.  And she put the subject parcel in the Karen L. Kelly 1990 Declaration of Trust, a revocable family trust.  Ms. Kelly was the settlor, trustee, and beneficiary of both trusts.

¶ 5    For tax purposes, the Summit County Assessor classified the residential parcel as residential land.  But the Assessor classified the subject parcel as vacant land, which is taxed at a higher rate.

¶ 6    In 2016, Ms. Kelly appealed the subject parcel's classification to the Summit County Board of County Commissioners (County).  She requested that the subject parcel be reclassified as residential land under section 39-1-102(14.4)(a) and sought a tax abatement for the tax years 2014 and 2015.  The County denied the petition.

¶ 7     Ms. Kelly then appealed the County's decision to the BAA, again requesting to have the subject parcel reclassified as residential land and seeking the associated tax abatement. At the evidentiary hearing, Ms. Kelly and the County presented evidence on the ownership of the parcels.

¶ 8     After the hearing, the BAA affirmed the County's classification of the subject parcel as vacant land, determining that the subject parcel and residential parcel were owned by two separate trusts and "[e]ach trust [was] a separate and distinct legal entity." It thus concluded that the parcels were not commonly owned and therefore the subject parcel did not qualify as residential land under section 39-1-102(14.4)(a).

## II.     Residential Land

¶ 9     Ms. Kelly contends that the BAA erred in concluding that the subject parcel was not residential land. More precisely, she argues that the BAA "misconstrued the 'common ownership' element of section" 39-1-102(14.4)(a). We agree.

### A.     Standard of Review and Applicable Law

¶ 10    The determination of the appropriate land classification for property tax purposes is a mixed question of law and fact. *Home*

3

*Depot USA, Inc. v. Pueblo Cty. Bd. of Comm'rs*, 50 P.3d 916, 920 (Colo. App. 2002). While we consider the BAA's determination to the extent it's consistent with the relevant statutory provisions, the interpretation of the tax statutes is a question of law that we review de novo. *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

¶ 11 In construing a statute, we look to the plain and ordinary language of the statute to give effect to the legislature's intent. *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 11. And we read words and phrases in context and construe them according to their common meaning and usage. *Morris v. Goodwin*, 185 P.3d 777, 779 (Colo. 2008). As well, we read and consider the statute as a whole, construing it to give consistent, harmonious, and sensible effect to all its parts. *Oakwood Holdings, LLC v. Mortgage Invs. Enters. LLC*, 2018 CO 12, ¶ 12. Only if the statute is ambiguous do we look to other statutory interpretation aids. *HealthSouth*, 246 P.3d at 951.

## B. Ownership

¶ 12 "Residential land" is defined as "a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction

4

with the residential improvements located thereon." § 39-1-102(14.4)(a); *Fifield v. Pitkin Cty. Bd. of Comm'rs*, 2012 COA 197, ¶ 9. The statute doesn't define "common ownership." And though the Property Tax Administrator is charged with enforcing the statute, § 24-1-125(2)(b), C.R.S. 2017, the Administrator, too, has not defined "common ownership," or offered guidance to assessors on determining whether two parcels are "under common ownership."

Lacking statutory or agency guidance, the BAA and the County interpret "common ownership" to mean the same record titleholder. As support, they lean heavily on *Sullivan v. Board of Equalization*, 971 P.2d 675 (Colo. App. 1998), arguing that the *Sullivan* division interpreted "common ownership" in subsection 102(14.4)(a) to mean that contiguous parcels must be "titled in the same name" to be residential land. But the parties in *Sullivan* agreed that different people owned the parcels at issue. *Id.* at 676 ("[T]axpayer states that he is not asserting that . . . the vacant parcel [is] residential under the common ownership provisions."). The division therefore didn't interpret "common ownership," and it didn't conclude that "common ownership" under subsection

102(14.4)(a) required contiguous parcels to be titled in the same name. *Id.* (declining to address this aspect of residential classification).

¶ 14    Without any legislative or other guidance, we consider the plain meaning of "ownership" as well as how courts have interpreted it in other contexts. *Ybarra v. Greenberg & Sada, P.C.*, 2016 COA 116, ¶ 10 (*cert. granted* Feb. 27, 2017) (looking to dictionary definitions and Colorado and federal cases for interpretive guidance). And while the BAA and the County use the phrase "common ownership," we focus specifically on "ownership" because if Ms. Kelly is the owner of the residential and subject parcels, no commonality issue exists. That is, to the extent the BAA and the County suggest that "common" means the "same" owner, the result here doesn't change since we conclude Ms. Kelly owns both parcels.[1]

¶ 15    "Ownership" is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." Black's Law Dictionary 1280 (10th ed. 2014); *see also*

---

[1] Because commonality is not at issue here, we take no position on the BAA's and the County's suggestion that "common" means the "same."

6

Restatement (First) of Property § 10 (Am. Law Inst. 1936) (As used in the Restatement, "[t]he word 'owner,' . . . means the person who has one or more interests.").

¶ 16    Consistent with this definition, courts, too, have long recognized that ownership goes beyond bare record title and instead focuses on who has the power to possess, use, enjoy, and profit from the property.  *See, e.g., Bd. of Cty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1278-79 (Colo. 2001) (outlining "significant incidents of ownership of interests in tax-exempt property"); *Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶¶ 9-11 (noting that the statutory powers of special districts to "acquire, dispose of, and encumber real and personal property" implies ownership of that property (quoting § 32-1-1001(1)(f), C.R.S. 2017)).  Use and possession in fact are so central to ownership that continuous, open, and exclusive possession and use of property may be sufficient to strip a record titleholder of ownership.  *See* § 38-41-101(1), C.R.S. 2017; *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd. P'ship*, 226 P.3d 1155, 1160 (Colo. App. 2009) (discussing requirements to adversely possess property).

¶ 17    In property tax cases in particular, courts often look beyond record title to determine ownership. *See, e.g., Frank Lyon Co. v. United States*, 435 U.S. 561, 572-73 (1978) (recognizing the Court's repeated refusals to allow formal legal title "to shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property"); *Mesa Verde Co. v. Bd. of Cty. Comm'rs*, 178 Colo. 49, 54, 495 P.2d 229, 232 (1972) (looking beyond "form and labels in order to ascertain real ownership interest involved" when a state tax is assessed against federal property); *Gunnison Cty. v. Bd. of Assessment Appeals*, 693 P.2d 400, 404 (Colo. App. 1984) (noting that record title does not determine ownership; rather, "[t]he question of ownership for tax purposes must be decided on the basis of 'real ownership' rather than 'forms and labels'"); *Planning Bd. of Norwell v. Serena*, 550 N.E.2d 1390, 1391 (Mass. 1990) (concluding that two lots controlled by the same owner but with different record title held by separate entities were commonly owned for zoning purposes).

¶ 18    Applying these principles, a division of this court recently considered whether individuals who held bare record title to

8

property, but enjoyed few of the recognized rights associated with ownership, were the owners of the property for taxation purposes. *HDH P'ship v. Hinsdale Cty. Bd. of Equalization*, 2017 COA 134 (*cert. granted* Apr. 9, 2018).  There, applying the substance over form doctrine, the division concluded that the individual record titleholders had little right to control the property.  *Id.* at ¶¶ 25-26.  Rather, "the traditional benefits of real property ownership, including the rights to exclude . . . , to erect or remove improvements, to control the river and its waters, and to profit from the land" were enjoyed by a different entity.  *Id.* at ¶ 26.  The *HDH Partnership* division therefore concluded that, "while the [individuals] h[e]ld bare legal title to the parcels, the [entity was] the true owner."  *Id.*

¶ 19     It may be that in many — perhaps most — cases the record titleholder is also the one who enjoys the right to possess, use, and control the property.  But we can't conclude the General Assembly intended to limit the meaning of "ownership," as the term is used in subsection 102(14.4)(a), to record titleholders.  After all, had the General Assembly intended to restrict ownership in such a way, it could have done so by simply defining residential land as "a parcel

9

or contiguous parcels of land, titled in the same name, upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon." But where the General Assembly did not restrict "ownership" to record titleholder, it is not for us to judicially do so. *Scroggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994); *Krol v. CF & I Steel*, 2013 COA 32, ¶ 28 n.6.

¶ 20 This interpretation is also consistent with the statute as a whole. *See Ybarra*, ¶ 8 (reading the statutory scheme as a whole to give it "consistent, harmonious, and sensible effect"). If the General Assembly intended that record title conclusively establishes ownership, it would have made such records conclusive evidence of ownership rather than providing taxpayers an avenue to challenge record title. § 39-5-102(1), C.R.S. 2017 (providing that assessors determine real property ownership through the clerk and recorder, but a person claiming interest in the property "may file a schedule with the assessor specifying such interest"); § 39-5-122(2), C.R.S. 2017 (providing a process for taxpayers to challenge assessment); *see also HDH P'ship*, ¶ 16 (concluding that record title creates a rebuttable presumption, but is not conclusive evidence of

10

ownership).  Under the BAA's and the County's interpretation, these provisions would be rendered meaningless.  *See Burton v. Colo. Access*, 2018 CO 11, ¶ 23 (noting we avoid interpreting statutes in a way that renders other provisions superfluous); *Soto v. Progressive Mountain Ins. Co.*, 181 P.3d 297, 300 (Colo. App. 2007) (same).

¶ 21    Nor do we share the concern that this interpretation places an unreasonable burden on assessors, as the County and the BAA argue.  No one disputes, of course, that assessors are allowed in the first instance to determine the ownership of two contiguous parcels from the county clerk and recorder's records.  § 39-5-102(1).  If unchallenged, the record title establishes ownership.  But, as pointed out, record title simply provides some evidence of ownership.  *Id.*  Such evidence is rebuttable, not conclusive.  *See* § 39-5-122(2); *HDH P'ship*, ¶ 16.  So, if, as here, a taxpayer seeks to reclassify a parcel, the burden is not on the assessor to justify the initial classification or prove ownership.  Instead, the burden shifts to the taxpayer to show that the ownership presumption accorded to the record titleholder is not correct.  *See Gyurman v. Weld Cty. Bd. of Equalization*, 851 P.2d 307, 310 (Colo. App. 1993) (noting that the taxpayer has the burden of proof to rebut the presumption

11

that the county assessor's classification is correct); *see also Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009) (stating that rebuttable presumptions shift "the burden [of] going forward to the party against whom it is raised"). If the taxpayer cannot rebut the presumption, then the record title establishes ownership.

¶ 22 We thus conclude that ownership of contiguous parcels for purposes of subsection 102(14.4)(a) depends upon a person's or an entity's right to possess, use, and control the contiguous parcels. *See HDH P'ship*, ¶ 22.

### C. The Residential and Subject Parcels

¶ 23 We turn then to the evidence presented at the BAA hearing regarding ownership of the parcels.

¶ 24 Mr. Taylor Dix testified as an expert in trust and estate planning.[2] He stated that a trust is created by a settlor (or grantor). The settlor, through a trust instrument, names a trustee to manage the property on behalf of the named beneficiaries "for whom the property is held." He explained that trusts split up title to property,

---

[2] Ms. Kelly offered Mr. Dix as an expert in "trust and estate planning." In that capacity, he testified, in part, about the effect of the trust instruments. No one objected to Mr. Dix's testimony at the hearing or on appeal, so we do not consider the propriety of his testimony. *See In re Marriage of Tozer*, 2017 COA 151, ¶ 7 n.1.

giving "the trustee . . . the legal title to the property," and the beneficiary "equitable or beneficial title to the property." He added that a beneficiary is therefore "the party who has the right to the use and the enjoyment and the possession of the trust property."[3]

¶ 25 He also testified that, under the trust instruments, Ms. Kelly was the beneficiary, trustee, and settlor of both trusts. This unchallenged expert testimony established that Ms. Kelly held legal title to the contiguous residential and subject parcels as trustee and, as the beneficiary of each trust, was also the equitable owner of the parcels. Given this, Ms. Kelly had the right to use, enjoy, possess, and control the adjacent parcels. *See* Helene S. Shapo, George Gleason Bogert, George Taylor Bogert & Amy Morris Hess, *The Law of Trusts and Trustees* § 182, Westlaw (database updated June 2017) ("[T]he beneficiary of a trust will normally take an equitable estate having rights and incidents similar to one owning a corresponding legal estate."); *see also Pandy v. Indep. Bank*, 2016 CO 49, ¶ 16 (noting the settlor of a revocable trust (in this case Ms.

---

[3] Mr. Dix also explained why lack of guidance in the Internal Revenue Service regulations leads people to place parcels with a residence in qualified personal resident trusts, but not place a contiguous undeveloped parcel in one.

Kelly) "retains the functional equivalent of ownership of the trust assets" (quoting 3 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott & Ascher on Trusts* § 15.4.2, at 960 (5th ed. 2007))); Restatement (Third) of Trusts § 2 cmt. d (Am. Law Inst. 2018) (defining "owner" for the purposes of the Restatement as "a person by whom one or more interests are held for the person's own benefit").

¶ 26    For her part, Ms. Kelly testified that she purchased the parcels in the 1990s and placed them in the two trusts for tax and estate planning purposes on the advice of counsel. She confirmed that placing the parcels in separate trusts did not have "any practical effect on [her] family's use or control of the parcels." So the evidence showed that Ms. Kelly possessed, controlled, and continued to use the parcels before and after they were placed in trust. *HDH P'ship,* ¶ 22 (right to control the property is essential to owning property).

¶ 27    The County then presented the Summit County Assessor, who testified that she denied reclassifying the subject parcel "because of the names [on the trusts] being different." Given the difference in record title, she "did not inspect the property" and "did not

investigate" any further.  The County presented no other evidence and nothing to dispute that Ms. Kelly used, possessed, and controlled the residential and subject parcels, or that she held legal title and was the equitable owner of the parcels.

¶ 28    While the BAA declined to credit the evidence regarding Ms. Kelly's use, possession, and control of the subject and residential parcels, the undisputed evidence showed that Ms. Kelly, as the trustee and beneficiary of both parcels, enjoyed the "traditional benefits of real property ownership." *Id.* at ¶ 26.  After all, in the field of taxation, the substance and realities matter, rather than the formalities of written documents.  *Frank Lyon Co.*, 435 U.S. at 572-73; *City of Golden v. Aramark Educ. Servs., LLC*, 2013 COA 45, ¶ 31; *cf. White v. Fitzpatrick*, 193 F.2d 398, 401-02 (2d Cir. 1951) (concluding that, while the taxpayer transferred legal title to his wife, he retained "administrative control" of the property and thus was the "actual enjoyer and owner of the property" for federal tax deduction purposes).

¶ 29    Because Ms. Kelly rebutted the ownership presumption and presented evidence showing she was the owner of the residential

and subject parcels, the BAA erred in denying the request to reclassify the subject parcel.

### III.    Contiguity and Use as a Unit

¶ 30    Beyond common ownership, to fall within the definition of residential land, the residential parcel and the subject parcel must also be "contiguous" and "used as a unit."  § 39-1-102(14.4)(a).

¶ 31    Before the BAA hearing, the parties filed a signed "stipulation regarding issues to be tried," agreeing, as relevant here, that "in this case,"

- "The 'contiguous parcels' element [was] stipulated to be satisfied and no trial of this element [was] necessary."

- "The 'used as a unit' element [was] stipulated to be satisfied and no trial of this element [was] necessary."

¶ 32    At the BAA hearing, the parties again explained that only the common ownership issue was disputed.  And the BAA chair confirmed which "two issues . . . were already settled."  The BAA did not raise concerns about the stipulation or ask the parties to present evidence on whether the subject parcel was "contiguous" or "used as a unit" with the residential parcel.

16

¶ 33    Nearly two months after the close of evidence, the BAA issued its written order. In it, aside from finding the parcels were not under common ownership, the BAA determined that it was "not bound by the parties' stipulation and [found] that insufficient information was presented to the [BAA] to determine whether the remaining two elements of the statute were satisfied."

¶ 34    Ms. Kelly contends that the BAA abused its discretion when, on its own, it rejected the parties' stipulation. We agree.

¶ 35    A court should give effect to a stipulation, unless a party timely requests to be relieved from it and shows "sound reason in law or equity for avoiding or repudiating a stipulation." *Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.*, 698 P.2d 1340, 1346 (Colo. 1985); *see also Gasteazoro v. Catholic Health Initiatives Colo.*, 2014 COA 134, ¶ 37. A court may also disregard a stipulation when it has "a legitimate and important concern about giving effect to that agreement." *Lake Meredith Reservoir*, 698 P.2d at 1346. Such a decision is within the court's discretion. *Id.* We will not disturb the court's decision absent an abuse of that discretion. *Id.* A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Gasteazoro*, ¶ 36.

¶ 36     The County did not ask the BAA to reject the stipulation. And at the evidentiary hearing both parties presented evidence only on the disputed ownership issue. At no point during the hearing did the BAA alert the parties that it had any concern about "giving effect to" their stipulation. *Lake Meredith Reservoir*, 698 P.2d at 1346.

¶ 37     Though the BAA faulted Ms. Kelly for presenting insufficient evidence on the stipulated issues, Ms. Kelly had no notice that months after the hearing the BAA would reject the stipulation. Under these circumstances, we conclude that the BAA's decision to reject the signed stipulation when it did, without notice to the parties, was manifestly unfair. *Cf. Snyder v. Colo. Podiatry Bd.*, 100 P.3d 496, 501 (Colo. App. 2004) (noting that the "essence of due process is fair procedure," which includes "providing adequate notice of opposing claims [and] a reasonable opportunity to defend against those claims").

¶ 38     Finally, the BAA (not the County) requests a remand for an evidentiary hearing to determine if the parcels are "contiguous" and "used as a unit" — the two elements the parties agreed were undisputed. The BAA, however, is not a party to the stipulation.

18

*See Bd. of Adjustment v. Kuehn*, 132 Colo. 348, 354, 290 P.2d 1114, 1116-17 (1955) (noting that the BAA was not a party to the proceeding, but was only tasked with deciding the question presented to it). Rather, it is the adjudicative body charged with review of abatement requests. *See* § 39-2-125(1)(f), C.R.S. 2017 (BAA hears appeals on claims for abatement); § 39-2-127(6), C.R.S. 2017 (BAA issues written decisions for each appeal heard).

¶ 39     Aside from the fact that the County — the actual party to the stipulation — does not request a remand, the County voluntarily entered the stipulation, agreeing that the parcels were "contiguous" and "used as a unit." Given these facts, it is hard to see how the County would not be estopped from presenting evidence on issues it admitted were undisputed. *See Maloney v. Brassfield*, 251 P.3d 1097, 1108 (Colo. App. 2010) (noting that stipulations are a form of judicial admission, which are binding on the party who makes them).

¶ 40     In sum, we conclude in this instance that the BAA abused its discretion in rejecting the parties' stipulation.

## IV.   Conclusion and Remand

¶ 41     While a remand for a new hearing is sometimes the appropriate remedy for misclassifications, *Hepp v. Boulder Cty. Assessor*, 113 P.3d 1268, 1272 (Colo. App. 2005), Ms. Kelly's undisputed right to use, possess, and control the residential and subject parcels under the trust instruments leads us to the legal conclusion that the parcels were under common ownership for tax years 2014 and 2015.  We thus reverse the BAA's order and remand with directions for the BAA to reclassify the subject parcel as residential land.

JUDGE WELLING and JUDGE CASEBOLT concur.