Chelsey Rae BURCHETT, a minor, through her guardian ad litem, Steven E. Ezell, Esq.; and Justin David Burchett, a minor, through his guardian ad litem, Lindsay F. Fischer, Plaintiffs,

v.

SOUTH DENVER WINDUSTRIAL CO., a Delaware corporation; Estate of James C. Cloutier; and Sandra Y. Okamoto, as personal representative of the Estate of James C. Cloutier, Defendants.

No. 01SA338.

Supreme Court of Colorado,
En Banc.

March 4, 2002.

J. Gregory Walta, Colorado Springs, Colorado, Attorney for Plaintiffs.

McClain, Drexler & Matthews, L.L.C., Regina T. Drexler, Michael J. Decker, Denver, Colorado, Attorneys for Defendant South Denver Windustrial Co.

Honorable Christopher J. Munch, Judge Golden, Colorado District Judge for the First Judicial District.

No appearance by or on behalf of the Estate of James C. Cloutier; and Sandra Y. Okamoto, as personal representative of the Estate of James C. Cloutier.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this original proceeding, we review the trial court's denial of a motion to postpone the deadline for disclosure of expert testimony and to continue the trial date. This tort case involves an airplane accident in which the pilot and passenger were killed. The surviving children of the passenger sued the estate of the pilot for wrongful death.

The trial was set eight months from the time the case was at issue. Four months before the trial date, and two weeks before the deadline for disclosure of expert testimony, the plaintiffs moved, with the agreement of the defendants, to postpone this deadline and to continue the trial date because both parties were waiting for the issuance of the accident investigation report from the National Transportation Safety Board (NTSB). Two weeks after the deadline for disclosure of expert testimony passed, the trial judge denied both motions. The plaintiffs then sought, with no opposition from the defen-

dants, an extraordinary writ in this court. We issued an order to show cause.

We hold that the trial court abused its discretion by refusing to grant the plaintiffs' motions to postpone the deadline for disclosure of expert testimony and to continue the trial. Hence, we make the rule absolute.

## II. Reasons for Granting Writ

C.A.R. 21 permits this court, at its discretion, to exercise original jurisdiction over this case. *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo.2001); *People v. Miller*, 25 P.3d 1230, 1231 (Colo.2001); *City & County of Denver v. Dist. Court*, 939 P.2d 1353, 1360–61 (Colo.1997). We may grant relief under C.A.R. 21 only when the trial court has abused its discretion or no other adequate remedy exists. *Id.*

We exercise jurisdiction under C.A.R. 21 when a case "raise[s] issues of significant public importance that we have not yet considered." *Wesp v. Everson*, 33 P.3d 191, 194 (Colo.2001). Trial courts must process each case in a timely, efficient, and fair manner. Although the parties moved to postpone the deadline for expert disclosure and sought to continue the trial date because both wanted the benefit of the NTSB investigation report before hiring experts and engaging in serious settlement negotiations, the trial court denied the parties' requests.

Appellate review is an inadequate remedy in this case because, at the time we granted the writ, the deadline for disclosure of expert testimony had passed, the trial date was pending, and the parties would have been forced to hire expensive expert witnesses to investigate the airplane accident instead of waiting for the same information from the NTSB.

## III. Facts and Proceedings Below

The plaintiffs' mother was killed in an airplane accident that also killed the pilot. The Colorado probate code required the plaintiffs to file suit against the pilot's estate sixty days after the personal representative denied the claim—long before the parties had the benefit of the NTSB's[1] accident

---

1. The NTSB thoroughly and meticulously investi-

gates all airplane accidents that involve serious

investigation report. The parties stipulated that without the report, there would be little chance of settlement because questions of fault and negligence would remain unanswered. In addition, the parties agreed that once the report is issued,[2] many questions regarding equipment failure and pilot error will likely be resolved and settlement discussions may become more viable.

The trial court that was assigned the case has a case management policy of scheduling cases for trial six months, or as close as possible thereto, from the time the case is at issue. The case became at issue in May 2001 and, although the parties requested the trial date be set a year away (May 2002) to await the issuance of the NTSB report, the court set trial for January 29, 2002. Pursuant to C.R.C.P. 26(a)(2)(C)(I), the plaintiffs' deadline for disclosing expert witness reports is 120 days before trial. Hence, the deadline for disclosure of expert testimony was October 1, 2001.

On September 12, 2001, the plaintiffs, with agreement by the defendants, moved to postpone the deadline for disclosure of expert testimony and to continue the trial date on the bases set forth above. On October 15, 2001, the trial court denied both motions.

## IV. Analysis

### A. Caseflow Management

Sound caseflow management plans are essential not only to ensure timely justice but also to provide a just process. Well-designed management plans are realistic, encourage settlement, encourage preparedness for trial by attorneys, reduce the costs of litigation, and increase the quality of the outcome of cases. David C. Steelman, *Caseflow Management: The Heart of Court Management in the New Millennium* 9 (2000); Bureau of Justice Assistance, *Differentiated Case Management* 4–5 (1993). As we noted in *Todd v. Bear Valley Village Apartments*, 980 P.2d 973, 976 (Colo.1999), "delay devalues judgments, creates anxiety in litigants

and uncertainty for lawyers, results in loss or deterioration of evidence, [and] wastes court resources."

A key component of caseflow management is strict adherence to trial-setting and continuance policies that create expectations on the part of attorneys that trials will start on the date set. *Id.* *See also* Steelman, *supra*, at 9. Likewise, a solid plan emphasizes attorney preparedness and encourages settling of cases. *Id.* Empirical research reveals that when attorneys perceive that the court rarely grants continuances, attorneys more actively seek settlement before trial and are more prepared when the set trial date arrives. *Id.*

This court supports the principle that trial courts, not attorneys, should closely control the management of dockets and cases. We applaud a trial court's efforts to design a case management system that will increase the efficiency of its docket. In keeping with this principle, trial setting and the granting of continuances are within the sound discretion of the trial courts. Furthermore, continuances "shall be granted only for good cause." C.R.C.P. 121 § 1–11; *Todd*, 980 P.2d at 976.

The goals of caseflow management must be harmonized with the ultimate goals of the court system—dispensing of cases fairly and expeditiously. Courts and litigants may not benefit from caseflow management plans that attempt to treat all cases similarly. A case management plan must make a reasonable effort to treat some cases differently, according to the specific needs of each case, and retain flexibility to provide exceptions to its management scheme. "Cases differ substantially in the time required for a fair and timely disposition." Bureau of Justice Assistance, *supra*, at 1; *see also* James S. Kakalik, et al., *Averting Gridlock: Strategies for Reducing Civil Delay in the Los Angeles Superior Court* 103 (1990) ("What is appropriate for one sort of case may not be appropriate, or may be counterproductive, for another.").[3]

Because each case is unique and deserves unique treatment, the trial court

---

injury in order to determine the cause of the crash.

2. At the time the plaintiffs sought the writ in this court, the NTSB had not released its report.

3. Caseflow management systems may be developed by judges and staff in the local district courts or by cooperation between the state and local courts. Caseflow management systems should include mechanisms to differentiate be-

should make a reasonable effort to distinguish from the outset between cases according to the amount and type of discovery, number of parties, and the amount of attention needed by the judge. Steelman, *supra*, at 5. Fitting caseflow management timetables to the specific needs of each case "minimiz[es] and mak[es] more predictable the time between case events." Bureau of Justice Assistance, *supra*, at 1.

As the Florida Supreme Court explained, "Case differentiation means that a case should be evaluated at the outset to determine the appropriate resources for that case and the appropriate way to handle that case." *In re Report of the Family Ct. Steering Comm.*, 794 So.2d 518, 529 (Fla.2001).

Our standard of review in this case is whether the trial court's denial of the continuance constitutes an abuse of discretion. *Todd*, 980 P.2d at 976.

## B. Application

■ This case demonstrates that it should have been treated differently than many others. It involves an airplane accident that will be investigated thoroughly and impartially by a respected government agency, irrespective of this litigation. The complicated discovery and expert requirements of the case make it such that a longer period before trial, and consequently for deadlines for disclosure of expert testimony, may improve the chances for settlement, reduce the costs of the litigation, and improve the overall outcome of the case.

A common reason for implementing an extended case management schedule is that the case is complex and needs extra attention by the judge to facilitate efficient and timely proceedings. This case most likely does not present such a situation. The judge and the parties may need to do little while they await the NTSB report. Once the report is issued, the parties agree that settlement is highly possible.[4] Even though this case may not present itself as one that requires extra judicial attention and likewise a detailed management plan, the trial court did not take into account the specific circumstances of the case when it set a trial date which in turn triggered related discovery deadlines.

Additionally, the trial court's denial of these motions may not further the important goals of attorney preparedness and predictability of time between case events. If the attorneys in this case had not prepared for trial, it was not because of lack of diligence but because they were awaiting the NTSB report. If trial would have proceeded, then the parties would have been forced to forego settlement discussions and would have had to hire expert investigators on short notice to try the case.

The trial court implied that it might reconsider continuing the trial date when the trial became imminent. Postponing the continuance reduces the predictability of the trial date and leaves the parties less sure about the need to be prepared while at the same time causing them to spend substantial sums to retain experts and obtain their opinions.

The trial court stated its policy that it considers continuances only when either the contingency has occurred or when the trial date is imminent. Here, because the trial date was not imminent when the parties sought the agreed continuance, it reasoned that the motions were premature and therefore unwarranted. As a general statement, we wholeheartedly endorse the trial court's

tween cases based on objective factors including, but not limited to, the complexity and number of issues, the number of parties, motions expected to be filed, possibility of settlement, the number of expected witnesses, the type and extent of discovery needed, the amount of judicial intervention needed, likelihood of trial, and length of trial. Maureen Solomon & Douglas K. Somerlot, *Caseflow Management in the Trial Court: Now and for the Future* (1987).

4. Of course, it goes without saying that the future is unpredictable. All that we conclude is that this case appears to have a high probability of settlement given the type of controversy, the responses of the parties, and the nature of the NTSB's preliminary report which suggested no cause of the accident other than pilot error.

The parties expect that the final report will explain the cause of the accident. Until the report is issued, settlement is unlikely because the defendants assert mechanical failure caused the accident, while the plaintiffs contend the pilot's negligence was the cause.

Even if settlement is not reached, the NTSB report may narrow the contested issues at trial, thereby reducing costs to the parties and the time needed to try the case.

policy which is rooted in that court's many years of experience. However this policy triggers another crucial deadline: disclosure of expert testimony. C.R.C.P. 26(a)(2)(C)(I).[5] As applied here, this deadline appears impractical and unnecessarily expensive.

Therefore, we conclude that the failure to grant a continuance in the unique circumstances presented by this case may impede justice, reduce the likelihood of settlement, and cause an increase in the cost of litigation.

Given the considerations discussed, we hold that the trial court abused its discretion when it denied the uncontested motions to postpone the deadline for disclosure of expert testimony and to continue the trial date.

## V. Conclusion

We make absolute the order to show cause and vacate the trial court's order that denied the plaintiffs' motion to postpone the deadline for disclosure of expert testimony and to continue the trial date.

---

5. We note that disclosure of expert testimony under C.R.C.P. 26(a)(2)(B) requires the disclosing party to produce a written report for each expert that includes such information as the opinions and reasons therefore, the expert's qualifications, the exhibits the expert will use, and other cases in which the expert has testified. C.R.C.P. 26(a)(2)(B).