Mark A. CORNELIUS, Applicant–Appellant

v.

RIVER RIDGE RANCH LANDOWNERS ASSOCIATION; Rio Cucharas Phase 3 Homeowners Association; Maria Lake Grazing Association; Dick Wolfe, State Engineer; Steve Witte, Division Engineer for Water Division 2; Huerfano County Commissioners; Huerfano County Water Conservancy District; Pat McConnell; Angela Treece; Talbert R. Mead, Jr.; Richard I. George; Loretta Charlifue; and Maria Martinez, Opposers–Appellees.

No. 08SA83.

Supreme Court of Colorado, En Banc.

March 2, 2009.

Max I. Exline, Pueblo, Colorado, Attorney for Applicant–Appellant.

Julianne M. Woldridge, Colorado Springs, Colorado, Attorney for Opposers–Appellees River Ridge Ranch Landowners Association and Rio Cucharas Phase 3 Homeowners Association.

John W. Suthers, Attorney General, Beth Van Vurst, Assistant Attorney General Denver, Colorado, Attorney for Opposers–Appellees Dick Wolfe, State Engineer and Steve Witte, Division Engineer for Water Division 2.

Garrett Sheldon Walsenburg, Colorado, Attorney for Opposer–Appellee Huerfano County Commissioners.

No appearance by or on behalf of: Pat McConnell, Angela Treece, Talbert R. Mead, Jr., Richard I. George, Loretta Charlifue, Maria Lake Grazing Association, LLP, and Maria Martinez.

Justice MARTINEZ delivered the Opinion of the Court.

## I.  Introduction

Mark A. Cornelius appeals the dismissal for failure to prosecute of three applications for adjudication of water rights by the water court for Water Division 2 ("water court"). Pursuant to a motion filed by several of the Opposers to the applications, the water court dismissed the cases because Cornelius failed to comply with the disclosure requirements of the Colorado Rules of Civil Procedure or substantively respond to requests for information from the Opposers.  In affirming the dismissal, we hold that a water court does not abuse its discretion in dismissing a case with prejudice when an applicant does not comply with the civil disclosure rules and fails to provide any information related to his applications other than that contained in the initial application.  Under circumstances such as these, a water court is not required to, sua sponte, convert a motion to dismiss for failure to prosecute into a motion for sanctions under C.R.C.P. 37.  Given the large-scale nondisclosure which was present here, the water court's conclusion that Cornelius's failure to comply with disclosure re-

quirements constitutes a failure to prosecute was not an abuse of discretion.

## II.   Facts and Procedural History

In June and August 2006, Cornelius filed three applications for adjudication of water rights.   Cornelius filed pro se and had no previous experience handling water cases. In case number 06CW44, Cornelius sought an application for an underground water right as well as an application for approval of a plan for augmentation.   In 06CW50 and 06CW65, respectively, Cornelius filed an application for surface water rights and an application for underground water rights. Cornelius sought roughly 1,000 gallons per minute in underground water rights and an indeterminate amount of water in surface water rights.[1]  He proposed to use all of the water for "livestock, commercial, and residential" uses; however, he did not provide any information about his specific plan for the water or identify the end users.

After the water court informed Cornelius that he failed to timely comply with the notification requirements of section 37–92–302(2)(b)(II), C.R.S. (2008), Cornelius properly notified affected land owners and published notice of the applications in the *Huerfano World* newspaper.

Numerous parties filed statements of opposition to the applications, including the Division Engineer for Water Division 2 ("Division Engineer"), neighboring property owners and owners' associations, the Huerfano County Water Conservancy District, and the Huerfano County Commissioners. As reasons for the opposition, the Opposers stated, among other things, that Cornelius does not have any ownership in, or access to, the wells claimed or the land on which the wells sit; all water rights in some of the claimed wells previously had been adjudicated as belonging to certain Opposers; the applications incorrectly state the location of certain wells; Cornelius's intended use is speculative; Cornelius did not adequately describe the rights asserted; Cornelius failed to provide engineering data showing

the proposed augmentation water will be replaced in time, location, and amount necessary to prevent injury to vested water rights; and the proposed augmentation water must be changed to an augmentation use before it can be used as augmentation water, and Cornelius failed to file an application for change of use.

On November 7, 2006, the cases were re-referred from a water court referee to a water court judge for further proceedings. On November 17, River Ridge Ranch Homeowners' Association ("River Ridge") informally requested information from Cornelius in writing and informed him of its ownership interest in a well Cornelius sought to use in his augmentation plan.   Cornelius responded by telephone; however, nothing appears in the record indicating the nature of the conversation.   The parties dispute which cases the informal request and telephone conversation were related to.

Pursuant to Water Court Rule 11(b), Cornelius's C.R.C.P. 26(a) disclosures were due on January 22, 2007; however, none were ever filed.

In late January of 2007, the Division Engineer filed Consultation Reports containing comments on the applications for underground water rights and the plan for augmentation.   The Division Engineer stated the water Cornelius proposed to appropriate was hydrologically connected to the Cucharas River, a tributary to the Arkansas River. Noting the Cucharas and Arkansas Rivers are overappropriated, the Division Engineer stated the proposed diversions would cause depletions to the river systems and injure the water rights of senior appropriators. Relying on the results of a field inspection conducted by the Water Commissioner, the Division Engineer stated many of the wells described in Cornelius's applications could not be located and that all are located on land not owned by Cornelius.   Accordingly, the Division Engineer stated Cornelius would need to amend the applications to provide the correct locations of the wells and

---

1.   The application is somewhat unclear; however, it appears Cornelius was seeking one gallon per minute in tributary surface flow.

demonstrate he had access to the wells from which he proposed to divert.

Under Water Court Rule 11(b), when an applicant is not represented by counsel, the trial court selects a responsible attorney who is tasked with setting the case for trial. The trial court chose the attorney representing Opposers River Ridge and Rio Cucharas Phase Three Homeowners' Association ("Rio Cucharas") as the responsible attorney. On March 8, 2007, the court held a case management hearing at which the cases were scheduled for back-to-back trials commencing on February 5, 2008. While all parties who filed statements of opposition attended the hearing, Cornelius did not. At the time the trial was set, River Ridge filed certificates of compliance in all three cases stating Cornelius had not filed any disclosures. Cornelius received copies of these certificates.

Cornelius and the Opposers had no contact between March 2007 and December 2007. During this time period Cornelius did not produce his required 26(a) disclosures, or provide the Opposers with any additional information related to the cases or the issues they raised in their Statements of Opposition. Further, the only information Cornelius provided regarding the cases was that contained in the applications themselves and the short, unrecorded telephone conversation Cornelius had with River Ridge. Accordingly, the Opposers had no more information related to proposed diversions than at the time Cornelius filed the applications.

On December 28, 2007, pursuant to C.R.C.P. 121, River Ridge and Rio Cucharas attempted to confer with Cornelius regarding a motion to dismiss for failure to prosecute they were planning to file. They received no response.[2] On January 2, 2008, River Ridge and Rio Cucharas filed a Motion to Dismiss for Failure to Prosecute, or in the Alternative, to Set a Trial Management Conference.

In support of the motion, they pointed to Cornelius's failure to make C.R.C.P. 26(a) mandatory disclosures or provide them with any substantive information about the cases. Specifically, they pointed to Cornelius's failure to supply information related to his claimed interest in certain wells owned by River Ridge or furnish any proof of a right to use the associated structures or water rights. The motion stated, because of the lack of information about the cases, the movants had been unable to determine "what evidence may be relevant, to obtain relevant information, and to prepare adequately for trial."

Several other Opposers, including the Division Engineer, joined the motion to dismiss. As support for the motion to dismiss, the Division Engineer reiterated the concerns expressed in its Statements of Opposition and Consultation Reports, particularly that Cornelius provided no information supporting his claim of interest in certain wells and surface waters, or that he had access rights to the claimed structures. The Division Engineer also commented on the speculative nature of the claimed water rights and the need to have more information about the proposed uses.

On January 18, Cornelius filed a Motion for Extension of Time to Vacate Trial Date in each case. In this motion, Cornelius stated he did not comply with the disclosure requirements because the "clerk of water court" told him he "had as long as [he] needed to put all thirty-eight wells together" and that most cases take one to two years. The motion did not provide any substantive information related to Cornelius's proposed uses for the water or the concerns raised by the Opposers. It did, however, contain an assertion that he believed River Ridge was under a duty to provide him with water, and River Ridge was intentionally withholding this water. He stated that, if River Ridge

2. Under C.R.C.P. 121 section 1–15(8), parties have a duty to confer with opposing parties before filing a motion. If no conference occurs, the moving party must provide a reason why the conference did not occur. As an explanation for the failure to confer, River Ridge stated Cornelius did not respond to a letter requesting a conference. Cornelius does not claim that there was no attempt to confer or that he did not receive the letter before he received the motion, nor does he claim that the timing somehow amounts to no attempt to confer. The trial court did not question or rule on the adequacy of the attempt to confer. Under these circumstances, the trial court did not abuse its discretion by accepting the stated reason there was no conference and ruling on the motion after receiving a response.

would not "share their water" with him, "it was the counties [sic] responsibility" to do so.[3] The motion also stated that, if given additional time, he would retain an attorney to work on the cases.

The following week, Cornelius submitted a letter to the court. The letter, although difficult to decipher, stated Cornelius had been trying for thirty-three years to acquire water rights, but that the county "would not give them to us," apparently out of animosity toward Cornelius and a desire not to expend funds on maintenance. Rather generally, Cornelius accused the Opposers of "stealing our state's water," and opposing his application in order to "get me thrown out" and "pick up the other wells ... for themselves." He additionally stated River Ridge, and all of its membership, had received illegal payment from a methane gas producer who had conducted drilling operations in River Ridge. He asserted this payment was in exchange for contamination the company allegedly caused to certain wells, and that he sought to obtain rights in these wells in order to bring suit against the gas producer to force them to pay remediation costs.

On January 29, 2008, after reviewing the motions and Cornelius's letter, the water court dismissed all three cases with prejudice.

Cornelius, now represented by counsel, appeals the water court's dismissal of the cases with prejudice. He argues the proper remedy for failure to make C.R.C.P. 26(a) disclosures is sanctions under C.R.C.P. 37 rather than dismissal under C.R.C.P. 41. He further argues that, even if dismissal was warranted, it was error for the water court to dismiss the cases with prejudice.

### III. Analysis

#### A. Standard of Review

Under C.R.C.P. 41(b)(1), a defendant, or, as pertinent here, an opposer in a water court case, can move a court to dismiss a case for a plaintiff's, or an applicant's, failure to prosecute. *See Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.*, 698 P.2d 1340, 1344–47 (Colo.1985) (discussing C.R.C.P. 41(b) in the context of a water case). Except where specifically altered by statute or the Water Court Rules, the Colorado Rules of Civil Procedure apply to water court proceedings. C.R.C.P. 81(a); *Colo. River Water Conservancy Dist. v. Rocky Mountain Power Co.*, 174 Colo. 309, 312–14, 486 P.2d 438, 440–41 (1971). The Water Court Rules contain no special criteria or procedures concerning dismissal for failure to prosecute claims in the water courts. *Lake Meredith Reservoir Co.*, 698 P.2d at 1344.

The power to dismiss for failure to prosecute is in the sound discretion of the trial court. *Cervi v. Town of Greenwood Village*, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961). Trial courts retain the discretion to dismiss an action with or without prejudice.[4] C.R.C.P. 41(b). The burden is on the plaintiff to prosecute a case "in due course without unusual or unreasonable delay." *Cervi*, 147 Colo. at 193, 362 P.2d at 1052. A trial court's decision to dismiss for failure to prosecute is not one that can be reviewed as a question of law, and should not be overturned absent proof of the court's abuse of that discretion. *Rathbun v. Sparks*, 162 Colo. 110, 116, 425 P.2d 296, 299 (1967).

To succeed in a motion to dismiss for failure to prosecute, the movant must prove the plaintiff has unusually or unreasonably delayed prosecution. *Lake Meredith Reservoir Co.*, 698 P.2d at 1344. Once unreasonable delay is established, the plaintiff must show mitigating circumstances or a rea-

---

**3.** Cornelius does not own any property within River Ridge Ranch.

**4.** Dismissal of a complaint without prejudice is not a final reviewable order. *See, e.g., Harris v. Regional Transportation District*, 155 P.3d 583, 585 (Colo.App.2006). C.R.C.P. 41(b)(1), relating to dismissal on motion of a defendant, provides that unless the order for dismissal "otherwise specifies," a dismissal for failure to prosecute

under the rule "operates as an adjudication upon the merits." Because dismissal without prejudice is non-reviewable, the test we apply when determining whether a trial court abused its discretion in dismissing an action necessarily applies to dismissal with prejudice. Here, the water court dismissed Cornelius's cases with prejudice, and he now appeals that final order.

sonable excuse for the delay; "however, an unusual delay in prosecution justifies an exercise of the trial court's discretion in dismissing an action." *Id.*

When evaluating a motion to dismiss for failure to prosecute, "a trial court must bear in mind that courts exist primarily to afford a forum to settle litigable matters between disputing parties." *Id.* (internal citations omitted). In considering whether to grant a motion to dismiss for failure to prosecute, the trial court must balance the "policy favoring the prevention of unreasonable delay in litigation against the policy favoring resolution of disputes on the merits." *Id.* at 1345. To aid this balancing test, a court should consider "a number of relevant factors in the exercise of its discretion," including the length of the delay, the reasons for the delay, the prejudice that will result to the defendant by allowing the matter to continue, and the difficulties in trying the case as a result of the delay. *Id.*

### B. The Propriety of Dismissal Under C.R.C.P. 41

Cornelius argues the water court should not have dismissed his cases under C.R.C.P. 41 but should have instead applied C.R.C.P. 37. Under Rule 37, a party may move a trial court to impose sanctions against the opposing party for failure to make disclosures or cooperate in discovery. Cornelius did not raise this argument below, and it was accordingly not preserved for appeal. Nonetheless, in discussing the parameters of the water court's discretion to dismiss the cases under Rule 41, we find it useful to consider Rule 37.

Under Rule 37, if a party fails to make disclosures required by C.R.C.P. 26(a), any affected party may move "to compel disclosure and for appropriate sanctions." C.R.C.P. 37(a)(2). Further, if, without "substantial justification," a party fails to disclose information required by Rule 26(a), that party shall not "be permitted to present any evidence not so disclosed at trial." C.R.C.P. 37(c). The trial court may additionally impose "other appropriate sanctions." *Id.*

Here, there was extensive nondisclosure. Cornelius failed to provide any initial disclosures required by Rule 26(a), although he was notified several times of the need to do so. Rule 26(a) disclosures begin the discovery process and provide parties with a starting point for gathering information about the case. Under Rule 26(a), among other things, parties must disclose the names and addresses of individuals with discoverable information; copies of, or a description by category and location of all documents and tangible things in each party's possession relevant to the case; and the identity of any person who may testify as an expert at trial. With the information provided by Rule 26(a) disclosures, parties may make specific requests for information or clarification of disclosed information.

Cornelius's applications required precise information about senior appropriations in the basin, whether his proposed diversion would harm senior water rights, and the replacement of source water resulting from his proposed out-of-priority diversions. The applications contained only general categories stating the proposed beneficial use of the water—domestic, commercial, and livestock—and did not identify end users or the particular manner in which the water would be used. Because the Arkansas and Cucharas Rivers are overappropriated, Cornelius's proposed plan for augmentation was crucial. However, Cornelius only proposed to augment one of the thirty wells from which he was seeking to appropriate. Accordingly, as a threshold matter, Cornelius would need to demonstrate his proposed diversions would not harm senior rights—a difficult task in an overappropriated basin when not relying on an augmentation plan. Further, Cornelius's proposed single well augmentation plan provided almost no detail with regard to the manner in which it would operate. It simply stated the well in question would "be engaged and piped to the Cucharas River in an adequate amount to augment the water consumed."

While not statutorily required, Cornelius failed to respond to the questions raised by the Division Engineer in its Consultation Reports as well as the assertions made by the

Opposers in the statements of opposition. Cornelius did not substantively respond to a written notification from River Ridge informing him of their claim of ownership of the wells and water right Cornelius proposed to use as a replacement source in his plan for augmentation. Therefore, by the time the Opposers filed the Motion to Dismiss for Failure to Prosecute—just over one month before the scheduled dates of the trials—the Opposers had almost no information before them with which to mount challenges to Cornelius's applications. The Opposers still did not know the correct location of many of the wells, the proposed use and location of use of the water, whether Cornelius owned any of the wells, whether their senior rights would be affected, and whether Cornelius had access rights to the wells—in many cases across property belonging to the Opposers. Without this information, the Opposers were not able to substantively assess Cornelius's claims or prepare defenses to his applications.

■ Generally, sanctions under Rule 37 should serve to cure discovery problems; however, when faced with nondisclosure as extensive as present in this case, a trial court does not abuse its discretion in ordering dismissal under Rule 41. Cornelius's almost complete nondisclosure can be fairly characterized as a failure to prosecute the cases beyond the filing of the initial application and providing notice to interested parties. Cornelius's failure to comply with the disclosure requirements was not a mere oversight by a pro se party unfamiliar with the Rules of Civil Procedure. Rather, the nondisclosure in this case was so extensive that the parties and the water court had virtually no specific information about Cornelius's applications.

■ While dismissal is a drastic remedy, only to be applied in "extreme circumstances," *Cullen v. Phillips,* 30 P.3d 828, 834 (Colo.App.2001), the water court did not abuse its discretion in ordering dismissal in this case. Here, Rule 37's suggested remedy of exclusion of the evidence Cornelius should have disclosed would be tantamount to dismissal. If Cornelius were prevented from presenting such evidence, the water court would have virtually no evidence before it

with which to assess Cornelius's applications. Cornelius would not be able to present evidence establishing his proposed beneficial use for the water, his claimed ownership of the wells he proposed to use in his plan for augmentation, whether his plan for augmentation would adequately replace the depletion caused by his proposed out-of-priority diversions, whether he had access rights to the wells and surface water he claimed, and whether his claim would harm senior water rights. Without this evidence, Cornelius would be unable meet the burden of proof required for approval of his applications and plan for augmentation. Accordingly, the exclusion of all pertinent evidence would lead to the same result as dismissal with prejudice—denial of Cornelius's applications and res judicata barring future pursuit of the applications.

Given the large-scale nondisclosure in this case, and the effect of the nondisclosure, Rule 41 is applicable. The Opposers have shown that Cornelius unreasonably delayed prosecution of his cases by failing to file any disclosures or respond to requests for information. As an explanation for the delay, Cornelius argues that, as a pro se party, he was unaware of the disclosure requirements. He also provides three mitigating circumstances and argues that, when taken together, they outweigh any unreasonable delay in the prosecution.

First, he argues no party has been harmed as a result of the delay. However, the Opposers *were* harmed because of the delay. Cornelius's failure to provide the Opposers with discoverable information prevented them from conducting any discovery and preparing for trial. Many of the parties retained counsel at their expense in order to oppose Cornelius's applications. All parties timely drafted and filed Statements of Opposition, some in consultation with experts. Each party attended the trial setting. One party filed its C.R.C.P. 26(a)(1) disclosures. The Division Engineer reviewed each application and issued a related Consultation Report. Many of the Opposers therefore expended considerable energy and expense in opposing Cornelius's applications.

Second, Cornelius argues that, in response to the motion to dismiss he sought to reset the trial date to a later time, and with the additional time, he would have been able to comply with the disclosure requirements. Appellate courts review a trial court's denial of a motion to continue a trial under an abuse of discretion standard. *Burchett v. South Denver Windustrial Co.*, 42 P.3d 19, 21 (Colo.2002). A "unilateral resumption of prosecution should not insulate a plaintiff from dismissal for lack of prosecution." *Lake Meredith Reservoir Co.*, 698 P.2d at 1345, n. 5. Therefore, Cornelius's assertion that, if given more time, he would comply with the disclosure requirements does not constitute a mitigating factor, and the water court did not abuse its discretion in denying the motion.

Third, Cornelius argues the delay was warranted by the complexity of the cases. However, a case's relative complexity has no bearing on whether dismissal is appropriate when there has been wholesale failure to comply with any disclosure requirements for over one year. Further, the fact Cornelius proposed to appropriate from approximately thirty wells does not establish that the cases were necessarily complex. In fact, Cornelius disclosed so little information that it is impossible to gauge the complexity of the cases. Here, a substantial quantity of water in an overappropriated basin was at stake, and Cornelius failed to provide adequate information for the court and the parties to understand the claims. In cases such as this, it is unreasonable to leave claims unexplained for over a year and a half. Accordingly, Cornelius's assertion that the case was complex and warranted delay is not a mitigating factor.

Finally, Cornelius's argument that, as a pro se party, he did not know of his obligations under the Water Court Rules or the Rules of Civil Procedure does not excuse his failure to make the required disclosures. While courts may take into account the fact that a party is appearing pro se, pro se parties are "bound by the same rules of civil

procedure as attorneys licensed to practice law." *Negron v. Golder*, 111 P.3d 538, 540 (Colo.App.2004).

## C.  Estoppel

Cornelius argues the Opposers were estopped from moving the water court to dismiss the cases as a result of their "own conduct in delaying to seek relief." He asserts the Opposers intentionally did not attempt to obtain the disclosures, preferring instead to wait until no disclosures were filed and seek dismissal under Rule 41. However, the Opposers were under no affirmative duty to move the case forward by prodding Cornelius to provide disclosures.[5]

"It is not the defendant's duty to make any move whatsoever, except such as the law requires him to make in response to the steps of the plaintiff." *Rathbun*, 162 Colo. at 115, 425 P.2d at 299 (internal citations omitted). Similarly, "a plaintiff who does not move a case forward with reasonable dispatch ... can find no solace in the activity of his opponent unless it has somehow hindered his own ability to proceed." *Id.* Accordingly, the fact the Opposers did not take more action aimed at obtaining information from Cornelius, when it was his duty to provide such information, did not estop them from seeking to dismiss the cases.

## D.  Dismissal with Prejudice

Cornelius argues that, if it was not error to dismiss the cases, it was nonetheless improper for the trial court to dismiss the cases with prejudice. He contends dismissal with prejudice was improper for two reasons: (1) the Opposers could have mitigated any harm caused by his delay in prosecution through filing a motion to compel or interrogatories; and (2) Cornelius is now likely to comply with the disclosure requirements because he is represented by counsel. Cornelius did not present this argument to the water court, and raises it for the first time on appeal.

---

**5.**  However, certain Opposers did inform Cornelius of his failure to comply with Rule 26(a)'s  disclosure requirements at least one time.

Cornelius's argument does not change our analysis of whether dismissal was proper. A trial court retains the discretion to dismiss an action with or without prejudice. C.R.C.P. 41(b). After balancing the unreasonableness of the delay with the proffered mitigating circumstances, dismissal with prejudice may be appropriate if the defendants are harmed as a result of the plaintiff's failure to prosecute. *See Tell v. McElroy*, 39 Colo.App. 431, 566 P.2d 374, 375 (1977). As we stated above, the Opposers were harmed as a result of Cornelius's delay, and Cornelius's proffered mitigating circumstances do not outweigh the unreasonableness of that delay.

Cornelius's argument that the Opposers could have mitigated harm through filing a motion to compel or interrogatories is unpersuasive because, as discussed above, it is the plaintiff's duty to prosecute a case. Cornelius's argument that he is now likely to comply with the disclosure requirements similarly fails. The simple fact that, given a second chance, a plaintiff would prosecute a case more diligently does not excuse an initial failure to prosecute or mean that a case should not be dismissed with prejudice. Cornelius has presented no case law suggesting the contrary. Rather, he again argues that because he was previously not represented by counsel, he did not know of his disclosure obligations. As discussed above, pro se parties are held to the same rules as parties represented by counsel. *Negron*, 111 P.3d at 540.

## IV. Conclusion

We conclude that the water court did not abuse its discretion in dismissing with prejudice Cornelius's applications for appropriation of water rights and plan for augmentation. Cornelius's large-scale nondisclosure and failure to provide the Opposers and water court with any information about his applications other than that contained in his initial applications constituted a failure to prosecute. The Opposers were prejudiced by this delay and Cornelius has failed to provide any mitigating reasons to account for the delay. Accordingly, we affirm the judgment of the water court.

Justice RICE dissents, and Justice COATS joins in the dissent.

Justice RICE, dissenting.

Based on the record before us, I agree that the trial court did not abuse its discretion in dismissing this case. However, because I find Cornelius's conduct was not willful or egregious, it did not prejudice Opposers, and less drastic sanctions were available, I conclude the trial court abused its discretion in dismissing the action *with prejudice*. For this reason, I respectfully dissent.

A trial court has discretion to dismiss an action with prejudice when a plaintiff fails to prosecute the action with due diligence. C.R.C.P. 41(b). However, that discretion is not without limits. "The rules which permit a court to dismiss a case for inactivity are not meant to be rules of forfeiture, but rather guides for the efficient and orderly administration of the courts." *Mizar v. Jones*, 157 Colo. 535, 537, 403 P.2d 767, 769 (1965), *repudiated on other grounds by Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co.*, 698 P.2d 1340, 1344 n. 5 (Colo.1985). Because the primary purpose of the courts is to provide a forum to settle litigable matters, a dismissal with prejudice is a drastic sanction to be applied only in extreme situations. *Tell v. McElroy*, 39 Colo.App. 431, 566 P.2d 374, 375 (1977), *repudiated on other grounds by Lake Meredith Reservoir Co.*, 698 P.2d at 1344 n. 5.

When deciding whether to dismiss a case with prejudice, a trial court must balance the desire to prevent unreasonable delays with the policy favoring resolution of disputes on the merits. *Lake Meredith Reservoir Co.*, 698 P.2d at 1345. A trial court should weigh a number of factors: the length and reasons for the delay; whether the plaintiff's conduct was willful; whether the plaintiff has resumed prosecution (including the nature and extent of those efforts); the prejudice that could result to the defendant by allowing the matter to continue; and the difficulty of trying the case as a result of the delay. *Id.* at

1344 n. 5, 1345. In addition, a trial court should consider whether there are less drastic alternatives available—such as a dismissal without prejudice—to balance the goal of effective case management with the responsibility to provide a forum for dispute resolution. *Tell*, 566 P.2d at 375; *see also Craig v. Rider*, 651 P.2d 397, 402–03 (Colo.1982) (explaining that a motion for default judgment, an extreme remedy, should be liberally construed in favor of resolution of disputes on the merits). An analysis of these considerations demonstrates that the dismissal with prejudice was inappropriately punitive and therefore an abuse of the trial court's discretion.

## I. Cornelius's Conduct Was Not Willful

The delay in this case was inadvertent and was caused by Cornelius's lack of knowledge about legal proceedings. It is evident from the record that Cornelius had no idea which rules applied, what deadlines existed, and what information had to be disclosed. Cornelius's uncontroverted position was that he relied on advice from a water court clerk, who indicated that Cornelius had as long as he needed and that it generally takes years to gather sufficient information about each well. As such, it is not surprising that Cornelius missed discovery deadlines and failed to disclose necessary information altogether.

In addition, Cornelius was making a good faith effort to comply with this timeframe, based on his assertion that he was in the process of gathering the materials for a substantial number of wells. Accordingly, there is no evidence that Cornelius willfully failed to comply with discovery rules, or that he abandoned preparation of the case.

## II. The Delay Occasioned by the Discovery Violations Did Not Prejudice the Defendants

The majority erroneously concludes that there was sufficient prejudice to Opposers to warrant a dismissal with prejudice because Opposers expended energy and resources in opposing Cornelius's applications. There are two errors in that conclusion: first, the majority applies the wrong standard for "prejudice to the defendant"; and, second, when the correct standard is applied, there is little or no prejudice to Opposers.

As noted above, in *Lake Meredith Reservoir Co.*, we said "the prejudice that will result to the defendant *by allowing the matter to continue* " is a factor to be considered. 698 P.2d at 1345 (emphasis added). We did not list as a factor-nor have subsequent decisions considered—the prejudice to a defendant in litigating the case up to the time of dismissal. *See id.* at 1346–47 (explaining that after a 37–year delay, defendant would be prejudiced because the substantive law had changed and fact witnesses would no longer be available); *Cullen v. Phillips*, 30 P.3d 828, 833–35 (Colo.App.2001) (defining prejudice—for purposes of laches and failure to prosecute—as loss of evidence, death of witnesses, or other circumstances arising during the delay that affect the defendant's ability to defend).

A correct understanding of the "prejudice to the defendant" factor requires an assessment of the defendant's ability to defend if the matter continues, not of the expenses incurred so far. Thus, the majority erroneously found relevant and persuasive that Opposers expended time and money defending the case. The fact that a defendant must expend time and money to defend an action is not unique to this case,[6] and certainly should not be grounds to grant a motion to dismiss *with prejudice*. Suggesting otherwise in effect makes every case with a discovery delay or dispute a good candidate for a dismissal with prejudice.

Moreover, Opposers failed to show they would suffer any prejudice if the matter were to continue. There was no showing that evidence or witnesses were no longer available or that the delay in any other way

---

**6.** In any event, the expenditures incurred by Opposers in this action were minimal. There was no activity from March 2007 until the motion to dismiss was filed in January 2008, and the activity before March 2007 was minor, consisting of filing Statements of Opposition and setting a trial date. Additionally, as Opposers concede, they did not have discovery, so they were unable to spend time and money preparing for trial.

precluded them from properly defending their rights.

## III. Less Drastic Alternatives Should Have Been Considered

Before imposing the sanction of dismissal with prejudice, the trial court was not given the opportunity to consider less drastic alternatives pursuant to C.R.C.P. 37, which could have resolved the discovery issues. As noted in the Committee Comment to Rule 37, the disclosure and discovery rules form a part of a comprehensive case management system, intended to aid both the parties and the court in preparing a case for trial.

To that end, the discovery rules recognize that an aggrieved party must expend some effort in resolving discovery violations. Specifically, a moving party must demonstrate that it, "in good faith, has conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." C.R.C.P. 37(a)(2). Therefore, while a defendant has no obligation to prod a plaintiff into action, I cannot conclude—as the majority does—that it was acceptable for Opposers to sit back for several months, do nothing in an attempt to rectify the discovery violations, and then expect the trial court—whose purpose is to provide a forum to litigate disputes—to dismiss the action *with prejudice*. Yet, this is precisely what occurred. The first application was filed in June 2006, providing for a discovery deadline in January 2007. Aside from the Statements of Opposition and the Consultation Report filed by the Division Engineer, almost nothing occurred in the initial months of the case. In March 2007, a trial date was set for February of the following year. From March until January 2008, when Opposers filed their motion to dismiss, there was no activity in the case. The record shows no effort, on the part of Opposers or the trial court, to resolve discovery disputes under Rule 37 or otherwise address Cornelius's failures.

The majority dismisses Rule 37 sanctions as a viable alternative, concluding that discovery sanctions would have been tantamount to dismissal. However, that conclusion assumes the only remedy available under Rule 37 was the exclusion from trial of any evidence not disclosed. This assumption fails to recognize that intermediate remedies available under Rule 37 may have allowed Cornelius to understand his failures and comply. In any event, Opposers did not pursue Rule 37 sanctions. Rather, they filed a C.R.C.P. 41 motion, seeking the most drastic remedy available to them, namely, a dismissal with prejudice.

Finally, Opposers did not in good faith comply with the provisions of C.R.C.P. 121 when they filed their C.R.C.P. 41 motion. Rule 121, section 1–10 requires "due notice to the opposite party" before a motion to dismiss is filed, and Rule 121, section 1–15(8) states that "[m]oving counsel shall confer with opposing counsel before filing a motion . . ., [and] if no conference has occurred, the reason why shall be stated."[7] In the motion to dismiss, Opposers assert that they complied with Rule 121 by attempting to confer with Cornelius before filing the motion. Counsel states she sent a letter to Cornelius about the motion and received no response. Yet, the letter was mailed on December 28, 2007—a Friday—and the motion was filed just a few days later on January 2, 2008. Not only was the letter sent over a holiday weekend, but only two of the five days between mailing and filing were business days. This "attempt" to confer with the opposing party before filing a motion was meaningless: it is unlikely Cornelius even received the letter by the time the motion was filed.[8]

---

7. The Committee Comment to Rule 121, section 1–15 suggests that conferring may not be appropriate in all cases, such as where conferring would be useless under the circumstances. As previously discussed, there are many ways to remedy a discovery violation, including remedies available under Rule 37. Conferring with Cornelius may have resolved some of the discovery violations and therefore conferring with him would not be "useless."

8. The only other evidence suggesting that Opposers attempted to obtain the undisclosed information is in a letter from counsel dated November 17, 2006, wherein counsel asked for information about ownership rights in the wells at issue. However, this letter was sent

## Summary

I conclude that none of the factors set forth in *Lake Meredith Reservoir Co.* favor dismissal *with prejudice* in this case. Cornelius should be afforded the opportunity to refile his applications and resolve the dispute on the merits. Dismissal without prejudice would be appropriate to assist the trial court with the orderly and efficient administration of its docket, but dismissal with prejudice needlessly punishes Cornelius. Accordingly, I conclude the trial court abused its discre-

*before* the discovery deadline (January 2007), and so could not serve to address Cornelius's

tion and I would reverse the portion of the trial court's order dismissing the case *with prejudice.* I respectfully dissent.

I am authorized to state that Justice COATS joins in this dissent.

subsequent violation of discovery rules.