**Michelle K. BERRY, Plaintiff**

v.

**Jennifer KELTNER, Defendant.**

**No. 09SA5.**

Supreme Court of Colorado,
En Banc.

May 26, 2009.

Cooper & Clough, P.C., John E. Clough, Wendy J. Lewis, Denver, Colorado, Attorneys for Plaintiff.

Wick & Trautwein, LLC, Kent N. Campbell, Kimberly B. Schutt, Fort Collins, Colorado, Attorneys for Defendant.

Justice RICE delivered the Opinion of the Court.

Plaintiff Michelle Berry brought this original proceeding to challenge a pretrial order precluding testimony from an expert witness she did not disclose by the applicable deadline. As we have held in the past, C.R.C.P. 37(c) dictates that a party be sanctioned for failure to comply with certain discovery deadlines by the preclusion of evidence or witnesses, unless the party's failure to comply is either substantially justified or harmless. *Todd v. Bear Valley Vill. Apartments,*

980 P.2d 973, 975 (Colo.1999). On the facts of this case, we hold that Plaintiff's untimely disclosure was substantially justified in that it was occasioned by the progressive nature of her alleged injuries. Furthermore, the expert testimony in question is potentially central to Plaintiff's case. We also hold that Plaintiff's failure to comply with the discovery deadline was harmless to Defendant Jennifer Keltner because the trial date has not been set and Defendant's opportunity to defend against the evidence has not been compromised. Thus, the trial court abused its discretion when it barred the expert witness.

## I. Facts and Proceedings Below

This case concerns injuries Plaintiff allegedly sustained in a 2004 traffic accident while riding as a passenger in Defendant's car. Since the accident, Plaintiff has been treated by several physicians, but she claims continued pain in her head, neck, back, and shoulder. Defendant refutes the alleged injuries, asserting that no treating physician has been able to point to objective evidence of Plaintiff's pain.

In August 2007, Plaintiff sued Defendant in Larimer County District Court. Pursuant to Larimer County's case management procedure, the court indicated it would not set a trial date until discovery was completed. The parties filed a Certificate of Compliance designating April 17, 2008, as the deadline for Plaintiff's expert disclosures; June 16, 2008, as the discovery deadline; and August 15, 2008, as the projected date the case would be ready for trial.

Plaintiff filed the initial expert disclosure two months after the deadline, listing 21 medical experts—but not the expert in question here.[1] Plaintiff then submitted an Amended Certificate of Compliance in August 2008 and sought a new discovery cut-off date and expert disclosure deadline. Defendant stipulated to the new discovery deadline of November 30, 2008, and the new proposed trial date of December 15, 2008, but she

---

**1.** The number of experts is explained by two factors. Plaintiff was a college student when she was injured and received treatment for her injuries in both her hometown and the town where she attended college. Over the four years since

the accident, Plaintiff sought resolution of her alleged chronic pain through chiropractic medicine, massage therapy, physical therapy, occupational therapy, acupuncture, and orthopedic medicine.

opposed Plaintiff's requested extension for expert disclosures. The trial court declined to approve the expert disclosure extension, citing the length of time discovery had been ongoing, Defendant's opposition, and the fact Plaintiff had already obtained one expert extension with her initial untimely filing.

In October 2008, Plaintiff's treating orthopedist reviewed a CT scan of Plaintiff's upper back and detected a new "corticated calcification" on her spine. A radiologist conducted a secondary review of the CT scan on November 6, 2008, and confirmed the presence of the calcification. Due to the potential significance of the scan results to her case, Plaintiff sought an extension of the discovery deadline in order to conduct further treatment and assessment of the calcification. On November 24, 2008, Plaintiff filed an Amended Certificate of Compliance, again agreed to by Defendant, which pushed the discovery deadline to December 31, 2008, and the proposed trial date to January 31, 2009.

As part of the further assessment, Plaintiff saw Kenneth Lewis, M.D., a pain management specialist and the expert in question. Dr. Lewis's diagnostic treatment, commencing November 18, 2008, consisted of two injections to the calcified area over the course of three weeks in order to delineate the degree of pain that could be controlled by anesthetizing the calcified object. After completing the injections, Dr. Lewis reported to Plaintiff's counsel on December 10, 2008, that he had achieved only minimal reduction in Plaintiff's overall pain with direct anesthesia onto the calcification. Dr. Lewis opined that the calcification probably was not the source of Plaintiff's pain, but rather a physical manifestation of that pain. Specifically, Dr. Lewis's report stated, "I do not believe at this point in time that the calcified nodule is actually the source of her pain but may simply be a result of injury suffered to that joint capsule during her motor vehicle accident and was [sic] an abnormal healing process." Plaintiff's counsel immediately faxed the report to Defendant. On December 11, 2008, Plaintiff filed a motion with the court requesting leave to endorse Dr. Lewis as an additional medical expert.

The trial court denied Plaintiff's motion, stating that the late disclosure of Dr. Lewis was not substantially justified. The court noted that Plaintiff filed her November 24, 2008 Amended Certificate of Compliance approximately one week after she initiated treatment with Dr. Lewis, yet that filing made no mention of the need to further extend the expert disclosure deadline. The court also referred to its rationale in rejecting Plaintiff's prior motion to extend the expert deadline and pointed to the numerous treatment providers already endorsed. After finding the motion unjustified, the court also concluded that permitting the late endorsement would delay trial and prejudice Defendant as a result. In particular, the court noted that a delayed trial would expose Defendant to increased prejudgment interest. Plaintiff contests the trial court's order, seeking relief in the nature of prohibition and mandamus.

## II. Analysis

This court has original jurisdiction under C.A.R. 21 to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *See Margolis v. Dist. Court,* 638 P.2d 297, 300–01 (Colo.1981). "Issuance of pretrial orders that significantly disadvantage claimants in litigating the merits of a controversy provides a basis for exercising jurisdiction in an original proceeding." *Todd,* 980 P.2d at 975 (citing *J.P. v. Dist. Court,* 873 P.2d 745, 747 n. 1 (Colo.1994)). Dr. Lewis's testimony concerns the calcification that, according to his report, provides physical evidence of Plaintiff's alleged chronic pain. The trial court's order precluding Lewis's testimony thus has the potential to substantially limit Plaintiff's ability to recover for her injuries. We therefore exercise original jurisdiction to determine if the trial court abused its discretion.

C.R.C.P. 37(c) states: "A party that without substantial justification fails to disclose information required by C.R.C.P. Rules 26(a) or 26(e) shall not, unless such failure is harmless, be permitted to present any evidence not so disclosed at trial. . . ." In *Todd,* we recognized a series of factors useful for eval-

uating whether a failure to disclose is either substantially justified or harmless, including:

(1) the importance of the witness's testimony;

(2) the explanation of the party for its failure to comply with the required disclosure;

(3) the potential prejudice or surprise to the party against whom the testimony is offered that would arise from allowing the testimony;

(4) the availability of a continuance to cure such prejudice;

(5) the extent to which introducing such testimony would disrupt the trial; and

(6) the non-disclosing party's bad faith or willfulness.

980 P.2d at 978. Applying the factors to this case, we conclude that Plaintiff's untimely disclosure was both substantially justified and harmless.

■ As stated above, we view Dr. Lewis's testimony as potentially having a substantial impact on Plaintiff's ability to recover for her alleged injuries. The trial court rejected Plaintiff's motion in part because she had already endorsed numerous treatment providers, including the physician who referred her to Dr. Lewis. However, Dr. Lewis's prognosis regarding the newly emergent physical evidence appearing on the November 2008 CT scan transforms Plaintiff's case, as it directly counters Defendant's allegation that Plaintiff's claims of injury are unsubstantiated. In addition, previously-endorsed physicians who are not specialists in pain medicine or who treated Plaintiff prior to the appearance of the calcification are not well suited to testify about the alleged causal nexus between Plaintiff's injury and the calcification. According to Plaintiff, Dr. Lewis will testify that, even if the calcification is not the *source* of her pain, it is objective physical evidence of her pain and her body's reaction to that pain. Dr. Dwyer, the referring orthopedist, might be able to testify as to the presence of the calcification, but would not have the same expertise as a pain specialist on the significance of the calcification with respect to Plaintiff's alleged pain. Thus, we conclude that Dr. Lewis's testimony is critical to Plaintiff's case. The trial court failed

to evaluate the significance of the testimony and to weigh its importance against the cost of delay.

We perceive no bad faith or willfulness on Plaintiff's part and find that she presents a credible explanation for her failure to comply with the expert disclosure deadline. Defendant accuses Plaintiff of "doctor shopping" on the eve of the trial-setting in an effort to find an expert to substantiate Plaintiff's claims. On the contrary, Plaintiff saw Dr. Lewis in response to new CT scan results on referral from an orthopedist who began treating her in 2006. There is no evidence that the November 2008 CT scan was connected to Plaintiff's trial strategy, as previous CT scans were taken during the course of Plaintiff's treatment. Plaintiff asserts that the calcification may not have appeared on prior tests because it can take time for calcification to develop after an injury. Less than two weeks after the calcification was discovered, Plaintiff had her first appointment with Dr. Lewis in an effort to discern its significance. Shortly thereafter, Defendant agreed to extend the trial date and discovery deadline in order to allow for further treatment and diagnosis relating to the calcification. Plaintiff then attended her second appointment with Dr. Lewis, at which point Dr. Lewis formed his prognosis that the calcification was a manifestation of Plaintiff's chronic pain. Plaintiff's counsel received Dr. Lewis's records the next day and immediately faxed them to Defendant. In our view, Dr. Lewis is a treating physician brought into this case through the natural course of Plaintiff's medical care. As new developments in Plaintiff's treatment occurred, it appears she acted quickly to keep the case moving forward. In sum, we find credible Plaintiff's claim that her untimely disclosure was occasioned by the progressive nature of her alleged injuries.

■ We next examine the potential prejudice or surprise to Defendant should the late endorsement of Dr. Lewis be permitted. We recognize that late disclosures close to a trial date often cause prejudice to the opposing party. *See Todd,* 980 P.2d at 979. However, we disagree with the trial court's conclusion

that Defendant would be prejudiced by the late endorsement in this case. As described above, Defendant was made aware of new developments in Plaintiff's treatment as soon as they occurred, eliminating any viable claim that Defendant would be surprised by the additional expert disclosure. Moreover, because the trial date has not yet been set in this case, and because Plaintiff states no objection to giving Defendant extra time to depose Dr. Lewis and re-depose the referring physician after the Lewis disclosure, Defendant will have ample opportunity to defend against Dr. Lewis's testimony. *See id.* (stating that the question is "whether the failure to disclose evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence").

We likewise decline to accept the trial court's conclusion that the untimely endorsement prejudices Defendant by exposing her to additional prejudgment interest. We noted in *Todd* that "the General Assembly instituted statutory prejudgment interest as a way of accounting for the time value of money." 980 P.2d at 981 n. 8. As was the case in *Todd,* Defendant would indeed be exposed to a greater amount of prejudgment interest as a result of a delayed resolution of this case. However, this additional amount "merely compensates [the plaintiff] for the fact that during those extra months, [the plaintiff] has not had the benefit of the use of the compensatory damages to which she might be found to be entitled, while [the defendant] has enjoyed the use of that amount." *Id.* Thus, we perceive no prejudice to Defendant based on her increased exposure to prejudgment interest.

We acknowledge finally that a trial court must closely control the management of dockets and cases in order to ensure "timely justice." *Burchett v. S. Denver Windustrial Co.,* 42 P.3d 19, 21 (Colo.2002). However, because a trial date has not yet been set, because of the potential importance of the testimony in question, and because we foresee the delay associated with the endorsement of a single additional expert to be minimal, we hold that Plaintiff's untimely disclosure does not present a significant enough disruption to the timeline to justify the denial of Plaintiff's motion.

## III. Conclusion

We conclude that Plaintiff's failure to comply with the discovery deadline was substantially justified and harmless. We thus hold that the trial court abused its discretion in precluding Plaintiff from endorsing the new expert witness for use at trial. We make the rule absolute and remand the case for proceedings consistent with this opinion.

Justice EID dissents.

Justice EID, dissenting.

In this case, the plaintiff has already designated twenty-one experts. Maj. op. at 248. She has already received one extension of the expert designation deadline. *Id.* In addition, she has failed to establish that Dr. Lewis' testimony is essential to her case, as Dr. Dwyer can testify to the presence of the calcification. *Id.* at 250. Finally, discovery has been ongoing in this case for over six months. *Id.* at 248–49. Under these circumstances, I would not find that the district court abused its discretion in refusing to permit the plaintiff to add a twenty-second expert. For these reasons, I respectfully dissent from the opinion of the majority.